In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 12-2440, 12-3029

BRIAN TEED *et al.*,

*Plaintiffs-Appellees*,

*v.*

THOMAS & BETTS POWER SOLUTIONS, L.L.C.,

*Defendant-Appellant.*

Appeals from the United States District Court
for the Western District of Wisconsin.
Nos. 3:08-cv-00303-bbc, 3:09-cv-00313-bbc—**Barbara B. Crabb**, *Judge*.

ARGUED JANUARY 9, 2013—DECIDED MARCH 26, 2013

Before POSNER, FLAUM, and WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*. Before us are appeals in two closely related collective actions for overtime pay under the Fair Labor Standards Act; for simplicity we'll pretend that they are just one suit and that there is just one appeal. The original named defendants were JT Packard & Associates, the plaintiffs' employer, and Packard's parent, S.R. Bray Corp. We don't know why the parent was made a defendant. It was not the plain-

tiffs' employer, and a parent corporation is not liable for violations of the Fair Labor Standards Act by its subsidiary unless it exercises significant authority over the subsidiary's employment practices. *In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation*, 683 F.3d 462, 469 (3d Cir. 2012); cf. *Antenor v. D & S Farms*, 88 F.3d 925, 935-36 (11th Cir. 1996). The record doesn't indicate that Bray exercised such authority over Packard's employment practices.

But this is an aside. What is important is that the district judge allowed the plaintiffs to substitute Thomas & Betts Power Solutions, LLC, for the original defendants, the reason being that its parent, Thomas & Betts Corporation, had bought Packard's assets and placed them in a wholly owned subsidiary, the substituted defendant. Essentially that company is Packard renamed, and we'll continue to refer to it under that name when we are talking about the company as a company; when we are talking about it as the substituted defendant we'll call it Thomas & Betts.

By virtue of the substitution, Thomas & Betts is the entity against which the plaintiffs seek damages for Packard's alleged violations of their rights under the Fair Labor Standards Act when Packard was owned by Bray. Thomas & Betts objected to being substituted, and its objection, rejected by the district court, is the sole basis of the appeal, which is from a final judgment for some $500,000 in damages, attorneys' fees, and costs, pursuant to a settlement agreement that is conditional however on the outcome of this appeal. We must decide

whether Thomas & Betts is, as the district court held, liable by virtue of the doctrine of successor liability for whatever damages may be owed the plaintiffs as a result of Packard's alleged violations.

When a company is sold in an asset sale as opposed to a stock sale, the buyer acquires the company's assets but not necessarily its liabilities; whether or not it acquires them is the issue of successor liability. Most states limit such liability, with exceptions irrelevant to this case, to sales in which a buyer (the successor) expressly or implicitly assumes the seller's liabilities. Wisconsin, the state whose law would apply if the underlying claim were based on state law, is such a state. *Columbia Propane, L.P. v. Wisconsin Gas Co.*, 661 N.W.2d 776, 784 (Wis. 2003). But when liability is based on a violation of a federal statute relating to labor relations or employment, a federal common law standard of successor liability is applied that is more favorable to plaintiffs than most state-law standards to which the court might otherwise look. See, e.g., *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 548-49 (1964) (Labor Management Relations Act); *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 184-85 (1973) (National Labor Relations Act); *Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1236 (7th Cir. 1986) (Title VII); *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture,* 920 F.2d 1323, 1327 (7th Cir. 1990) (ERISA); *EEOC v. G-K-G, Inc.*, 39 F.3d 740, 747-48 (7th Cir. 1994) (Age Discrimination in Employment Act); *Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 781 (9th Cir. 2010) (Family and Medical Leave Act); cf. *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 746 (7th Cir. 1985) (42 U.S.C.

§ 1981—racial discrimination in contracting). In particular, a disclaimer of successor liability is not a defense.

We must consider whether the federal standard applies when liability is based on the Fair Labor Standards Act, and if so whether, properly applied, the standard authorized the imposition of successor liability in this case.

Packard provided, and continues under its new ownership by Thomas & Betts to provide, maintenance and emergency technical services for equipment designed to protect computers and other electrical devices from being damaged by power outages. All of Packard's stock was acquired in 2006 by Bray, though Packard retained its name and corporate identity and continued operating as a stand-alone entity. The workers' FLSA suit was filed two years later.

Several months after it was filed, Bray defaulted on a $60 million secured loan that it had obtained from the Canadian Imperial Bank of Commerce and that Packard, Bray's subsidiary, had guaranteed. To pay as much of the debt to the bank as it could, Bray assigned its assets—including its stock in Packard, which was its principal asset—to an affiliate of the bank. The assets were placed in a receivership under Wisconsin law and auctioned off, with the proceeds going to the bank. Thomas & Betts was the high bidder at the auction, paying approximately $22 million for Packard's assets. One condition specified in the transfer of the assets to Thomas & Betts pursuant to the auction was that the transfer be "free and clear of all Liabilities" that the buyer had not

assumed, and a related but more specific condition was that Thomas & Betts would not assume any of the liabilities that Packard might incur in the FLSA litigation. After the transfer, Thomas & Betts continued to operate Packard much as Bray had done (and under the same name, as we noted), and indeed offered employment to most of Packard's employees.

If Wisconsin state law governed the issue of successor liability, Thomas & Betts would be off the hook because of the conditions. But as we said, they do not control, or even figure, when the federal standard applies. As usually articulated, that standard requires consideration of the following factors instead (see *Wheeler v. Snyder Buick, Inc.*, *supra*, 794 F.2d at 1236; *Musikiwamba v. ESSI, Inc.*, *supra*, 760 F.2d at 750-51):

(1) Whether the successor had notice of the pending lawsuit, which Thomas & Betts unquestionably had when it bought Packard at the receiver's auction; this is a factor favoring successor liability.

(2) Whether the predecessor (Packard or Bray—remember that both were defendants originally) would have been able to provide the relief sought in the lawsuit before the sale. The answer is no, because of Packard's and Bray's insolvency caused by Bray's defaulting on the bank loan. The answer counts against successor liability by making such liability seem a windfall to plaintiffs. But this depends on how long before the sale one looks.

(3) Whether the predecessor could have provided relief after the sale (again no—Packard had been sold, with the proceeds of the sale going to the bank, along with

Bray's remaining assets). The predecessor's inability to provide relief favors successor liability, as without it the plaintiffs' claim is worthless.

(4) Whether the successor can provide the relief sought in the suit—Thomas & Betts can—without which successor liability is a phantom (this is a "goes without saying" condition, not usually mentioned).

(5) Whether there is continuity between the operations and work force of the predecessor and the successor, as there is in this case, which favors successor liability on the theory that nothing really has changed.

Judges tend to be partial to multifactor tests, which they believe discipline judicial decisionmaking, providing objectivity and predictability. But this depends on whether the factors making up the test are clear, whether they are valid, whether each is weighted so that the test can be applied objectively even if the factors don't all line up on one side of the issue in every case (they don't in this case, for example), and whether the factors are exhaustive or illustrative—if the latter, the test is open-ended, hence indefinite. The federal standard does not satisfy all these criteria. But applying a slight variant of the standard, the district judge concluded that there was successor liability in this case, and her analysis is thoughtful and persuasive.

We reach the same conclusion that she did, though by a slightly different route. We suggest that successor liability is appropriate in suits to enforce federal labor or employment laws—even when the successor disclaimed liability when it acquired the assets

in question—unless there are good reasons to withhold such liability. Lack of notice of potential liability—the first criterion in the federal standard as usually articulated—is an example of such a reason. We'll examine other possible reasons applicable to this case shortly; but first we need to decide whether a federal standard should ever apply when the source of liability is the Fair Labor Standards Act.

The idea behind having a distinct federal standard applicable to federal labor and employment statutes is that these statutes are intended either to foster labor peace, as in the National Labor Relations Act, or to protect workers' rights, as in Title VII, and that in either type of case the imposition of successor liability will often be necessary to achieve the statutory goals because the workers will often be unable to head off a corporate sale by their employer aimed at extinguishing the employer's liability to them. This logic extends to suits to enforce the Fair Labor Standards Act. "The FLSA was passed to protect workers' standards of living through the regulation of working conditions. 29 U.S.C. § 202. That fundamental purpose is as fully deserving of protection as the labor peace, anti-discrimination, and worker security policies underlying the NLRA, Title VII, 42 U.S.C. § 1981, ERISA, and MPPAA." *Steinbach v. Hubbard*, 51 F.3d 843, 845 (9th Cir. 1995). In the absence of successor liability, a violator of the Act could escape liability, or at least make relief much more difficult to obtain, by selling its assets without an assumption of liabilities by the buyer (for such an assumption would reduce the purchase price by imposing a cost on the

buyer) and then dissolving. And although it can be argued that imposing successor liability in such a case impedes the operation of the market in companies by increasing the cost to the buyer of a company that may have violated the FLSA, it's not a strong argument. The successor will have been compensated for bearing the liabilities by paying less for the assets it's buying; it will have paid less because the net value of the assets will have been diminished by the associated liabilities.

There are better arguments against having a federal standard for labor and employment cases, besides the general objections to multifactor tests that we noted earlier: applying a judge-made standard amounts to judicial amendment of the statutes to which it's applied by adding a remedy that Congress has not authorized; implied remedies (that is, remedies added by judges to the remedies specified in statutes) have become disfavored; and borrowing state common law, especially a common law principle uniform across the states, to fill gaps in federal statutes is an attractive alternative to creating federal common law, an alternative the Supreme Court adopted for example in *United States v. Bestfoods*, 524 U.S. 51, 62-64 (1998), in regard to the liability of a corporation under the Superfund law for a subsidiary's violations. But Thomas & Betts does not ask us to jettison the federal standard; it just asks us not to "extend" it to the Fair Labor Standards Act. Yet none of the concerns that we've just listed regarding the filling of holes in a federal statute with federal rather than state common law looms larger with respect to the Fair Labor Standards Act than with respect to any other federal

labor or employment statute. The issue is not extension but exclusion.

Thomas & Betts argues that the Act imposes liability only on "employers," 29 U.S.C. §§ 203(d), 216(b), and Thomas & Betts was not the employer of the suing workers when the Act was violated. But that is equally true when successor liability is imposed in a Title VII case, as the case law requires. It argues that Wisconsin has an interest in this case because it too has minimum wage and overtime laws. But states also have their own laws, paralleling Title VII, forbidding employment discrimination. It points out that most FLSA suits are brought by individuals for the recovery of individual damages rather than by the government (though in fact the Department of Labor brings many), but likewise most Title VII suits are private rather than public. It argues that violations of the FLSA are "victimless," because no one is compelled to work for a company that violates that Act. Neither is anyone forced to work for a company that discriminates on grounds forbidden by Title VII, such as race and sex. Yet there are victims of the violations in both FLSA and Title VII cases—workers who would be paid higher wages if their employer complied with the FLSA and workers who would have better jobs and working conditions if their employer complied with Title VII. Moreover, there is an interest in legal predictability that is served by applying the same standard of successor liability either to all federal statutes that protect employees or to none—and "none" is not an attractive option at our level of the judiciary, given all the cases we cited earlier.

And so the federal standard applies to this case. But was it properly applied? The argument that it was not focuses on Packard's financial situation before it was sold to Thomas & Betts. Remember that Bray owed the bank $60 million and couldn't pay; that its only valuable asset was Packard; and that Packard was worth little more than a third of what Bray owed the bank. So only the happenstance of Packard's acquisition by Thomas & Betts could enable the plaintiffs to obtain relief.

But it might seem that to allow that relief would enable the plaintiffs, whose wage claims are unsecured, to obtain a preference over a senior creditor, namely the bank, which had a secured claim. Thomas & Betts would have bid less at the auction had it known it would have to pay the workers' FLSA claims, and so the bank would have obtained less money from the sale. It is true that as soon as Bray defaulted, the bank could have foreclosed on Packard's assets because they were the security for the bank's loan; the workers' claim to those assets was unsecured and therefore subordinate to the banks' claim. But the bank would no more want to own Packard, a nonfinancial company, than to own the houses of defaulting mortgagors whose mortgages it forecloses. It would want to sell Packard; and if it sold it as a going concern, a buyer subject to successor liability would not pay as much as it would if it didn't bear that liability. As a result the bank's secured claim would in effect become junior to the workers' unsecured claim by the amount by which that claim depressed the price that the successor would pay for Packard.

That is a good reason not to apply successor liability after an insolvent debtor's default, whether its assets were sold in bankruptcy or outside (by a receiver, for example, as in this case): to apply the doctrine in such a case might upend the priorities of competing creditors. See *In re Trans World Airlines*, 322 F.3d 283, 290, 292-93 (3d Cir. 2003); Douglas G. Baird, *The Elements of Bankruptcy* 227-28 (5th ed. 2010). It's an example of a good reason not mentioned in conventional formulations of the federal standard for not imposing successor liability. But it doesn't figure in this appeal. Thomas & Betts has not urged it. It says that it didn't discount its bid for Packard because of the workers' claims; this both suggests that it didn't anticipate successor liability and may explain why the bank has not complained about the imposition of that liability.

Thomas & Betts argues that to allow the plaintiffs to obtain relief gives them a "windfall." They had no right to expect that Packard would be sold, at least as a going concern; and had it not been sold, but instead continued under Bray's ownership, or broken up and its assets sold piecemeal, the bank loan would have precluded their obtaining any relief. Had Packard remained an operating subsidiary of Bray, its net income (about $5 million a year) would have belonged to the bank, while if its assets had been sold piecemeal there is no successor liability, because of the lack of continuity between predecessor and successor; for when a company is broken up and its assets sold piecemeal, there is no successor to transfer the company's liability to. But to allow Thomas & Betts to acquire assets without their associated liabilities, thus stiffing workers who have

valid claims under the Fair Labor Standards Act, is equally a "windfall."

Thomas & Betts argues finally, with support in *Musikiwamba v. ESSI, Inc.*, *supra*, 760 F.2d at 751, that allowing the workers to enforce their FLSA claims against the successor, in a case such as this in which the predecessor cannot pay them, complicates the reorganization of a bankrupt. Seeing the handwriting on the wall and wanting to minimize the impact of the reorganization on them (in loss of employment or benefits), the workers might decide to file a flurry of lawsuits, whether or not well grounded, hoping to substitute a solvent acquirer for their employer as a defendant in the suits. The prospect thus created of increased liability might scare off prospective buyers of the assets. But there is no suggestion of such a tactic by workers in this case; if there were, it would be another good reason for denying successor liability.

Still another concern is that an insolvent company, seeking to maximize its value, might decide not to sell itself as a going concern but instead to sell off its assets piecemeal, even if the company would be worth more as a going concern than as a pile of dismembered assets. In the latter case there would be as we said no successor liability, and successor liability depresses the going-concern value of the predecessor, so the insolvent company might be better off even though it was destroying value by not selling itself as a going concern. Once a firm is in Chapter 7 bankruptcy (or in a Chapter 11 bankruptcy in which a trustee is appointed), or receiver-

ship, it is "owned" by the trustee (or receiver), whose sole concern is with maximizing the net value of the debtor's estate to creditors (and maybe to other claimants—including shareholders, if the estate is flush enough to enable all the creditors' claims to be satisfied in full). *In re Taxman Clothing Co.*, 49 F.3d 310, 315 (7th Cir. 1995); *In re Central Ice Cream Co.*, 836 F.2d 1068, 1072 (7th Cir. 1987). With immaterial exceptions, the trustee in a Chapter 7 bankruptcy (or, we assume, a receiver) must sell the debtor's assets for the highest price he can get. 11 U.S.C. § 704(a)(1); *In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010); *In re Atlanta Packaging Products, Inc.*, 99 B.R. 124 (Bankr. N.D. Ga. 1988). He may not cut the price so that some junior creditor can enforce a claim not against the debtor's assets but against a third party, the successor, in this case Thomas & Betts. The trustee would be required to sell the assets piecemeal if that would yield more money for the creditors as a whole (to be allocated among them according to their priorities) than sale as a going concern would, even if some creditors would be harmed because successor liability would have been extinguished, and even if economic value would have been destroyed.

But this is a theoretical rather than a practical objection. Since most firms' assets are worth much more as a going concern than dispersed, successor liability will affect the choice between the two forms of sale in only a small fraction of cases. Lynn M. LoPucki & Joseph W. Doherty, "Bankruptcy Fire Sales," 106 *Mich. L. Rev.* 1, 5 (2007).

With these chimeras set to one side, there is no good reason to reject successor liability in this case—the default rule in suits to enforce federal labor or employment laws. (For remember that the successor's disclaimer of liability is not a good reason in such a case.) Packard was a profitable company. It went on the auction block not because it was insolvent but because it was the guarantor of its parent's bank loan and the parent defaulted. Had Packard been sold before Bray got into trouble, imposition of successor liability would have been unexceptionable; Bray could have found a buyer for Packard willing to pay a good price even if the buyer had to assume the company's FLSA liabilities. Those liabilities were modest, after all. Remember that the parties have agreed to settle the workers' suit (should we affirm the district court) for only about $500,000, though doubtless there was initial uncertainty as to what the amount of a judgment or settlement would be; in addition, Thomas & Betts incurred attorneys' fees to defend against the suit. Nevertheless had Packard been sold before Bray got into trouble, imposition of successor liability would have been unexceptionable, and we have not been given an adequate reason why its having been sold afterward should change the result.

AFFIRMED.