In the

# United States Court of Appeals

### For the Seventh Circuit

No. 14-1660

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

*Plaintiff-Appellee,*

*v.*

NORTHERN STAR
HOSPITALITY, INC., d/b/a
SPARX RESTAURANT, *et al.,*

*Defendants-Appellants.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:12-cv-00214 — **Barbara B. Crabb**, *Judge.*

ARGUED SEPTEMBER 26, 2014 — DECIDED JANUARY 29, 2015

Before FLAUM, MANION, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* This case is about equitable remedies under Title VII of the Civil Rights Act of 1964. There is no question that Dion Miller suffered unlawful

discrimination under Title VII. He experienced a racist episode in the workplace and was fired in retaliation for opposing it. The sole issue here involves the remedies designed to make him whole.

Specifically, Appellants challenge the district court's decision to hold certain entities—Northern Star Properties, LLC ("Properties"), and North Broadway Holdings, Inc. ("Holdings")—liable for the actions of a dissolved entity— Northern Star Hospitality, Inc. ("Hospitality"). Appellants also challenge the district court's tax-component award to Miller, which comprises additional damages designed to offset his tax liability on his back-pay award.

For the reasons expressed below, we affirm the judgment of the district court.

## I. BACKGROUND

Dion Miller is an African-American male who worked as a cook for Hospitality, a company that did business as Sparx Restaurant. During his time at Sparx, Miller rose to the position of assistant kitchen manager, earning $14 per hour. He was, by all accounts, a satisfactory employee.

### A. The Discrimination

On October 1, 2010, Miller arrived at Sparx to begin his morning shift. A coworker told him to look at the kitchen cooler. When he did, he discovered a defaced dollar bill. The dollar bill depicted a noose around President Washington's neck with a swastika on his forehead and a darkened area on his cheek. Adjacent to President Washington's head was a hooded Klansman on horseback with "KKK" sketched on his hood. A separate picture of the late Gary Coleman—a

famous African-American child actor—was posted on the cooler below the dollar bill.

Miller asked a coworker to take a photo of the display, and then he lodged a complaint. Kitchen manager Evan Openshaw and kitchen supervisor Chris Jarmuzek took responsibility for the display. Openshaw said he posted the picture of Gary Coleman, while Jarmuzek said he posted the defaced dollar bill. The restaurant's general manager testified that the posting of the racist dollar bill qualified as a termination-worthy offense. Yet, for whatever reason, Jarmuzek was not terminated; he was only given a warning. Openshaw was not disciplined at all.

Soon after Miller's complaint, Openshaw and Jarmuzek began to criticize Miller's work performance. He had received no such complaints before. Sparx fired Miller on October 23, 2010.

Less than two years later, Sparx closed its doors when Hospitality dissolved. In its stead emerged Holdings, a second company that did business as a Denny's Restaurant. Both Hospitality and Holdings operated their restaurants in a building owned by Properties, a third company. Importantly, all three companies were owned by Chris Brekken. But we'll return to that fact later.

*B. The Enforcement Action*

On March 27, 2012, the United States Equal Employment Opportunity Commission ("EEOC") filed a complaint on Miller's behalf. The EEOC alleged that Hospitality violated Sections 703(a) and 704(a) of Title VII, 42 U.S.C. §§ 2000e-2(a), 3(a), by subjecting Miller to racial harassment and by terminating him in retaliation for opposing the harassment.

Although it initially only named Hospitality as the defendant, the EEOC amended its complaint on September 7, 2012, to add Properties and Holdings as defendants.

Hospitality quickly moved for summary judgment on all claims. The district court granted the motion in part and denied it in part. Regarding the claim of racial harassment, the district court found that no reasonable juror could conclude that Miller was subjected to sufficiently severe or pervasive harassment. It consequently granted summary judgment for Hospitality on that claim.

By contrast, the district court denied summary judgment on the retaliation claim. Given the suspicious timing of Miller's termination, the ambiguous reasons offered for it, and Miller's discipline-free history juxtaposed against the company's progressive discipline policy, the district court found that a reasonable juror could conclude that Miller was terminated in retaliation for his complaint about the kitchen-cooler display.

Before a reasonable juror could actually answer that question, though, the district court convened a bench trial on August 12, 2012, to determine whether Properties or Holdings (or both) could be held liable for the actions of Hospitality. By that point in the case, Hospitality had dissolved, leaving only Properties and Holdings in its wake. And if neither of those entities could be held liable for the actions of Hospitality, then Miller would have been left with no one to recover from. Fortunately for Miller, the district court found Properties and Holdings eligible for liability. It did so based on two alternate and equitable determinations: (1) a pierced corporate veil and (2) successor liability.

After that critical ruling, a jury trial commenced. The EEOC won its suit on the retaliation claim, and the jury awarded Miller $15,000 in compensatory damages. Despite finding that Appellants acted with reckless disregard for Miller's civil rights (a predicate for punitive damages under Title VII), the jury did not order punitive damages. So to make Miller whole, the EEOC sought additional remedies from the district court. It requested front pay and back pay, along with a tax-component award to offset Miler's impending income-tax liability on the lump-sum back-pay award.

The district court denied the front-pay request but granted the back-pay and tax-component awards. It awarded Miller $43,300.50 in back pay (and interest) and an additional $6,495.00 to offset the impending taxes estimated at fifteen percent of the back-pay award. The district court also enjoined Appellants from discharging their employees in retaliation for complaints against racially offensive postings. It further required them to adopt policies, investigative processes, and annual training consistent with Title VII.

Appellants challenge the district court's decision to hold Properties and Holdings liable for the actions of Hospitality. Appellants also challenge the decision to award Miller the tax-component award. We examine each issue in turn.

## II. ANALYSIS

A district court's determination to grant equitable remedies is reviewed for abuse of discretion. *See Hicks v. Forest Pres. Dist.*, 677 F.3d 781, 792 (7th Cir. 2012); *see also Bruso v. United Airlines*, 239 F.3d 848, 861 (7th Cir. 2004).

Successor liability is an equitable determination. *Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin*, 59 F.3d 48, 49 (7th Cir. 1995). So is an award to offset tax liability for a lump-sum back-pay award. *Eshelman v. Agere Sys.*, 554 F.3d 426, 441-42 (3d Cir. 2009). We turn to successor liability first.

### A. Successor Liability

In a case involving more than one corporate entity, successor liability is "the default rule … to enforce federal labor or employment laws." *Teed v. Thomas & Betts Power Solutions, LLC*, 711 F.3d 763, 769 (7th Cir. 2013). Without it, "the victim of the illegal employment practice is helpless to protect his rights against an employer's change in the business." *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 746 (7th Cir. 1985) ("A predecessor's illegal act may have left the employee without a job, promotion, or other employment benefits that he cannot now obtain from another employer, but that he might have received from the successor had the predecessor not violated the employee's rights."). Where the successor has notice of a predecessor's liability, there is a presumption in favor of finding successor liability. *Worth v. Tyer*, 276 F.3d 249, 260 (7th Cir. 2001) (citing *EEOC v. Vucitech*, 842 F.2d 936, 945 (7th Cir. 1988)).

We recently articulated a five-factor test for successor liability in the federal employment-law context: (1) whether the successor had notice of the pending lawsuit; (2) whether the predecessor could have provided the relief sought *before* the sale or dissolution; (3) whether the predecessor could have provided relief *after* the sale or dissolution; (4) whether the successor can provide the relief sought; and (5) whether

there is continuity between the operations and work force of the predecessor and successor. *Teed*, 711 F.3d at 765-66.

Although the district court did not expressly cite this test when it found Holdings a successor of Hospitality, we conclude that it adequately adhered to the test's framework. For example, the district court correctly noted that Holdings had notice of the lawsuit against Hospitality. *EEOC v. N. Star Hospitality*, No. 12-cv-214, 2013 U.S. Dist. LEXIS 117638, at *19 (W.D. Wis. Aug. 20, 2013) ("It knew about Hospitality's potential liability for the retaliation against Miller; and it knew, because Brekken knew and Brekken was the only owner or officer of Holdings").

Chris Brekken, central to the district court's reasoning on notice, is a key actor in this story. He is the sole owner of Properties—the company that leased the same building to Hospitality and Holdings so that each could operate its restaurant—as well as the sole shareholder, officer, and director of Hospitality and Holdings. Recall that Hospitality did business as the Sparx Restaurant. It was formed at approximately the same time as Properties in late 2004. Holdings, on the other hand, was formed on March 27, 2012. Brekken formed that company to operate a Denny's Restaurant in the building owned by Properties after he closed Sparx on June 3, 2012. There can be no doubt, then, that Holdings was on notice of what happened at Hospitality: Brekken had notice, so his companies had notice. Under both *Teed* and *Vucitech*, this factor weighs in favor of successor liability.

As for factor two, the district court did not expressly discuss Hospitality's ability to provide relief to Miller before its dissolution. The court did, however, detail facts that

suggest it could have provided such relief, which weighs in favor of successor liability. For example, Hospitality continually made payments on Properties' mortgage, paid for corporate training for Holdings' eventual management team, paid severance fees to its former employees, and paid the liquor license fees for the future Denny's Restaurant operated by Holdings.[1]

That brings us to factor three. The district court found that Hospitality could not have paid any judgment obtained against it, presumably because of its dissolution. This finding also weighs in favor of successor liability. *Musikiwamba*, 760 F.2d at 746 (noting successor liability protects victims against an employer's change in business).

Factor four. Much like factor two, the district court did not expressly discuss this factor. But as we observed in *Teed*, factor four "is a goes without saying condition, not usually mentioned." 711 F.3d at 766 (internal quotations omitted). The district court's silence, therefore, gives us no pause. Operating as a Denny's Restaurant, Holdings can provide the relief sought.

Finally, factor five also weighs in favor of successor liability. The district court found:

> [Holdings] moved into a building prepared for it by Hospitality to the specifications of the Denny's Corporation, hired more than half of the employees previously employed by Hospitality, hired Hospitality's management team, the members of

---

[1] Hospitality paid all this money despite incurring substantial operating losses in 2009 and 2012 and despite holding over $2 million in debt. It offered no explanation as to how this debt disappeared.

which had been trained by Denny's at Hospitality's expense, and used the same work rules for the employees that Hospitality had used at Sparx. In other words, Holdings carried on the restaurant business at 1827 North Broadway, albeit with a different name and theme.

*N. Star Hospitality*, 2013 U.S. Dist. LEXIS 117638, at *18-19.

In sum, when Hospitality dissolved, Holdings was created. Successor liability is meant for this very scenario; it helps make victims of discrimination whole under Title VII by combatting similar changes in business. *See Teed*, 711 F.3d at 766 ("The predecessor's inability to provide relief favors successor liability, as without it the plaintiffs' claim is worthless."). Because each of the above factors weighs in favor of successor liability, the district court did not abuse its discretion when it found Holdings to be a successor of Hospitality and therefore liable to Miller.

Unsatisfied with this result, Appellants press us to apply the integrated-enterprise approach. That approach, they contend, warrants relief from the district court's judgment because Holdings was not in existence at the time the harm occurred. It follows, the argument goes, that it cannot be held liable for the actions of Hospitality. But we cannot accept this argument. We abrogated the integrated-enterprise approach to Title VII cases long ago, *see Worth*, 276 F.3d at 260 (citing *Papa v. Katy Ind., Inc.*, 166 F.3d 937, 941-43 (7th Cir. 1999)), and we see no good reason to change course now.

Because the district court did not abuse its discretion when it found Holdings liable as a successor to Hospitality,

we need not review its decision to pierce the corporate veil to find affiliate companies Properties and Holdings liable for Hospitality's actions. It is enough of a remedy for Miller that Holdings is liable as a successor. It must now pay the judgment.

We turn to the final equitable remedy at issue: the fifteen percent tax-component award granted by the district court.

### B. Tax Component Award

As discussed, Appellants challenge the district court's award to Miller of $6,495 to offset the tax burden he shall carry as a result of his lump-sum back-pay award. Although other circuits have examined these awards, *see, e.g., Eshelman v. Agere Sys.*, 554 F.3d 426, 441 (3d Cir. 2009) ("[A]n award to compensate a prevailing employee for her increased tax burden as a result of a lump sum award will, in the appropriate case, help to make a victim whole."); *Sears v. Atchison, Topeka & Santa Fe Ry. Co.*, 749 F.2d 1451, 1456 (10th Cir. 1984)  (upholding award of tax component to back pay given a district court's "wide discretion in fashioning remedies to make victims of discrimination whole"), this case presents our first occasion to do so.

Today, we join the Third and Tenth Circuits in affirming a tax-component award in the Title VII context. Upon Miller's receipt of the $43,300.50 in back pay, taxable as wages in the year received, *see* IRS Pub. No. 957 (Rev. Jan. 2013), *available at* www.irs.gov/pub/irs-pdf/p957.pdf, Miller will be bumped into a higher tax bracket. The resulting tax increase, which would not have occurred had he received the pay on a regular, scheduled basis, will then decrease the sum total he should have received had he not been unlawfully terminated

by Hospitality. Put simply, without the tax-component award, he will not be made whole, a result that offends Title VII's remedial scheme. *See Williams v. Pharmacia, Inc.*, 137 F.3d 944, 952 (7th Cir. 1998) ("We have noted previously that 'the remedial scheme in Title VII is designed to make the plaintiff whole.'" (quoting *McKnight v. General Motors Corp.*, 908 F.2d 104, 116 (7th Cir. 1990))).

To be sure, the district court should have told us how it arrived at the fifteen percent figure amounting to $6,495. Silence on the issue tends to frustrate appellate review, and it would be wise for district courts to show their work if and when they adjudge similar tax-component awards in the future.[2] *Eshelman*, 554 F.3d at 443 (emphasizing district courts should adjudge tax-component remedies in the discrimination context based on "circumstances peculiar to the case"). Nevertheless, in this case, the district court did not abuse its wide discretion in granting this modest, equitable remedy.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[2] The EEOC offers a justification on appeal, contending the fifteen-percent figure represents the lowest marginal rate at which the IRS will tax Miller once he receives his back pay.