[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12280
_____

D.C. Docket No. 5:11-cv-00416-WTH-PRL

SALLY HATFIELD,
and similarly situated individuals,
TRACI IVELENE GLAUSIER,
And similarly situated individuals,
LAUREN MCCLAIN,
COELEEN BENDER,
KENNETH KEYES, et al.,

Plaintiffs - Appellees,

versus

A+ NURSETEMPS, INC.,
a Florida for-profit corporation
d.b.a. Nursetemps, Inc.,

Defendant,

PRIME STAFF HOLDINGS, LLC,
STAFF AMERICA, INC.,

Defendants - Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 3, 2016)

Before HULL, JULIE CARNES, and BARKSDALE,[*] Circuit Judges.

PER CURIAM:[**]

For this action by six nurses (the nurses; subsequently, Sally Hatfield was voluntarily dismissed), at issue is whether, under Federal Rule of Civil Procedure 69(a)(1) (procedure on execution and proceedings supplementary to, and in aid of, judgment or execution), a judgment pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–19, against A+ Nursetemps, Inc., can be enforced, under a theory of FLSA successor liability, against Prime Staff Holdings, LLC, and Staff America, Inc. (appellants).  Michael Arthur owned A+ Nursetemps while it was operating, and presently owns Prime Staff Holdings, which he acquired after this action was filed, and then used to acquire Staff America.  A+ Nursetemps and Staff America are nurse registry and staffing agencies that refer nurses, such as plaintiffs-appellees, as shift workers to healthcare providers.  Claiming A+

_____

[*] Honorable Rhesa Hawkins Barksdale, United States Circuit Judge for the Fifth Circuit, sitting by designation.

[**] Pursuant to 11TH CIRC. R. 36-2, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 11TH CIR. R. 36, I.O.P.7.

2

Nursetemps did not transfer assets to them, appellants maintain the judgment against A+ Nursetemps cannot be enforced against them. It can, however, because, under federal common law for the FLSA, appellants are successors of A+ Nursetemps. AFFIRMED.

I.

In two actions, judgments were entered against A+ Nursetemps for failing to pay overtime compensation under the FLSA to its nurses, who, the district court concluded, were properly classified as employees. The first judgment included nearly $300,000 in unpaid wages and liquidated damages, and was awarded in May 2013 to 148 of A+ Nursetemps' adjudged-employees in a Department of Labor (DOL) action filed in May 2007. *Harris v. A+ Nursetemps, Inc.*, No. 5:07-cv-182-Oc-10PRL (M.D. Fla. 21 May 2013). Although it had been resolved by a consent judgment in November 2008, it was necessary for the DOL in May 2012 to move for a contempt citation to enforce the judgment.

In the second action, which underlies this appeal, nurses not included in the DOL action filed this action in Florida state court in June 2011. *Hatfield v. A+ Nursetemps, Inc.*, No. 5:11-cv-416-Oc-10PRL (M.D. Fla. 20 June 2013). A+ Nursetemps removed it to district court, which exercised 28 U.S.C. § 1331 federal-question jurisdiction under the FLSA. Nearly $75,000 in unpaid wages and liquidated damages was awarded by summary judgment to the nurses on 20 June

3

2013.  That August, the nurses were also awarded, by default judgment, approximately $70,000 in attorney's fees and costs.  A+ Nursetemps did *not* appeal either award.

The nurses, however, were unable to satisfy the judgment against A+ Nursetemps.  Therefore, as discussed *infra*, in November 2013, they successfully moved, pursuant to rule 69, to implead as successors-in-interest of A+ Nursetemps, both Prime Staff Holdings and Staff America.  Those two entities were acquired by Arthur shortly after this action was filed; and A+ Nursetemps ceased operations shortly before the judgments were issued in the DOL, and this, action.  Arthur was the only witness at the bench trial for the rule 69 proceeding.  He testified, *inter alia*, that:  another judgment was rendered against A+ Nursetemps in January 2013, separate from the DOL judgment; and the subsequent collection efforts for the January 2013 judgment resulted in A+ Nursetemps' accounts being garnished.

Judgment was awarded the nurses.  The court, relying upon federal common law fashioned under the FLSA, based its decision on successor liability.

II.

For the following reasons, FLSA successor liability was a viable theory, and judgment was rendered properly against appellants on that basis.

A.

1.

In relevant part, rule 69 provides: "The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies". Fed. R. Civ. P. 69(a)(1). Along that line, state-law procedures govern, unless a federal statute explicitly provides the procedures for execution of judgments. *See* James Wm. Moore et al., 13-69 *Moore's Federal Practice*, Civil § 69.03 (2015); *see also Branch Banking & Tr. Co. v. Ramsey*, 559 F. App'x 919, 923–24 (11th Cir. 2014) (determining a specific provision of 28 U.S.C. § 566 governed the procedure for a federal writ of execution; accordingly, federal law applied); *United States v. Gianelli*, 543 F.3d 1178, 1182 (9th Cir. 2008) (applying federal law pursuant to the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, which "provides the exclusive civil procedures for the United States to . . . recover a judgment on a debt"); *F.T.C. v. Namer*, 481 F. App'x 958, 959–60 (5th Cir. 2012) (same). The FLSA does not provide such procedures. Therefore, Florida procedural law applies for execution of the judgment at issue.

Toward that end, rule 69 was adopted in 1937 as part of the original Federal Rules of Civil Procedure, and largely "follow[ed] in substance" 28 U.S.C. § 727 (superseded). *See* Fed. R. Civ. P. 69 advisory committee's note to subdivision (a). Section 727 provided, *inter alia*, that state rules in effect in 1872 were applicable in federal court. ("The party recovering a judgment . . . in any common-law cause

5

in any district court, shall be entitled to . . . reach the property of the judgment debtor, as were provided, on June 1, 1872, in like causes by the laws of the State in which such court is held[.]"  Act of June 1, 1872, c. 255, 17 Stat. 197, codified at 28 U.S.C. § 727 (superseded); Charles A. Wright et al., 12 *Federal Practice & Procedure* § 3011 n.3 (2d ed.).)  Concerning such supplementary proceedings pursuant to rule 69, "[t]he Advisory Committee believed that to develop a set of nationally uniform rules . . . would have been impractical and near impossible since the rules would have to be relatively detailed to meet the diverse situations in the various states".  Moore et al., § 69 app. 102.  Moreover, some States had existing rules for supplementary proceedings, reducing the need for a federal standard. *Id.*

Relevant here, Florida Statute § 56.29(1), which is part of the procedural authority relied on by the nurses for the rule 69 proceeding, entitles a judgment-holder to "proceedings supplementary to execution" if they:  (1) hold an unsatisfied judgment; and (2) file a motion and affidavit stating the execution of the judgment is valid and outstanding, as well as identify the issuing court, case number, and unsatisfied amount.  In such a proceeding, a Florida "court may order any property of the judgment debtor, not exempt from execution, in the hands of any person, or any property, debt, or other obligation due to the judgment debtor, to be applied toward the satisfaction of the judgment debt".  § 56.29(5).  A court may also enter

6

"orders necessary or proper to subject property or property rights of any judgment debtor to execution, and including entry of money judgments against any impleaded defendant irrespective of whether such defendant has retained the property". § 56.29(9).

2.

When the nurses could not execute the judgment against A+ Nursetemps, which had ceased operating before judgment was rendered, they moved to implead Arthur's other two companies, Prime Staff Holdings and Staff America. Citing rule 69(a)(1), Florida Rule of Civil Procedure 1.190(d), and Florida Statute § 56.29(1), they maintained they were entitled to execute the judgment against Arthur's two newer companies. In that regard, relying on federal common law for the FLSA, they claimed Prime Staff Holdings and Staff America were successor entities to A+ Nursetemps.

Neither Arthur nor A+ Nursetemps responded to the impleader motion. In granting it, the court concluded: the motion complied with rule 69 and Florida Statute § 56.29; and appellants "had notice of this lawsuit through their principal, Michael Arthur". Order, *Hatfield v. A+ Nursetemps, Inc.*, No. 5:11-cv-416-Oc-10PRL, at *3 (M.D. Fla. 12 Dec. 2013).

Thereafter, appellants moved, *inter alia*, for summary judgment, contending: the nurses failed to establish appellants retained transferred assets from A+

Nursetemps; and this was required for successor liability.  The court denied summary judgment, concluding:  "Although the Eleventh Circuit . . . has not yet addressed the question . . . , the Parties appear to agree, at least for purposes of ruling on summary judgment, that successor liability is a viable doctrine applicable to FLSA claims for unpaid overtime compensation".  Order Denying Summary Judgment, *Hatfield v. A+ Nursetemps, Inc.*, No. 5:11-cv-416-Oc-10PRL, at *5 (M.D. Fla. 16 Dec. 2014).

Following that denial, the parties filed a joint pretrial statement, which provided:  "No merger or transfer of assets has occurred involving A+ Nursetemps, Inc. and Prime or [Staff America]".  Appellants based a renewed motion to dismiss in large part on that statement.  In response, the nurses, *inter alia*, stated that, after filing the pretrial statement, they discovered legal authority showing an asset transfer of shared goodwill, customer lists, employees, and management took place; and, relying upon that authority, they moved immediately to supplement their opposition to the renewed motion to dismiss.

At the bench trial, the majority of A+ Nursetemps' former employees were shown to be employed by Staff America.  The court concluded Prime Staff Holdings and Staff America were successors-in-interest, under federal law, of A+ Nursetemps, and, therefore, the judgment could be enforced against them. *Glausier v. A+ Nursetemps, Inc.*, No. 5:11-cv-Oc-416-10PRL, 2015 WL 2020332,

8

at *5–6 (M.D. Fla. 1 May 2015).  In so doing, the court stated it had "no reason to believe that the Eleventh Circuit would choose" not to apply federal-common-law successor liability in this FLSA action.  *Id.* at *5.

B.

At issue is whether, based on the bench trial for the rule 69 proceeding, the judgment may be enforced against Prime Staff Holdings and Staff America under a FLSA common-law theory of successor liability.  Along that line, bench trial conclusions of law are reviewed *de novo*; factual findings, for clear error.  *E.g., Tartell v. S. Fla. Sinus & Allergy Ctr., Inc.*, 790 F.3d 1253, 1257 (11th Cir. 2015).  "A factual finding is clearly erroneous if, after viewing all the evidence", the court is "left with the definite and firm conviction" an error was made.  *Id.*  (internal quotation marks omitted).

In contesting successor liability, Prime Staff Holdings and Staff America maintain "Staff America did not assume or absorb any business assets from A+ Nursetemps", or otherwise receive the assets of that company via a sale, merger, or acquisition.  In addition, they assert the record does not support the court's concluding that a transfer of assets occurred.

In response, the nurses maintain FLSA successor liability applies, regardless of whether a transfer of assets occurred.  In that regard, they claim the federal-common-law standard, as applied by the district court, was satisfied; and,

9

therefore, the court did not err in concluding the judgment against A+ Nursetemps is enforceable against Prime Staff Holdings and Staff America.

Because, as discussed above, our review is *de novo* for conclusions of law, those provided in the district court's comprehensive opinion are not entitled to deference; but, again, the findings of fact must be upheld unless clearly erroneous. Regarding the merits of the successor-liability claim against appellants, and pursuant to our *de novo* review, the conclusions of law in the opinion are well-reasoned. *Glausier*, 2015 WL 2020332, at *6–7. And, for the following reasons, because A+ Nursetemps' liability was based on a FLSA violation, the federal-common-law standard, considered more favorable to plaintiffs in federal-employment and labor-relations actions, applies. *See Teed v. Thomas & Betts Power Sols., L.L.C.*, 711 F.3d 763, 764–65 (7th Cir. 2013).

Although this court does not appear to have applied the federal-common-law standard in FLSA actions, it and the Supreme Court have consistently applied it under other federal labor laws. For example, following its recognition in *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 548 (1964), of successor liability under the Labor Management Relations Act, the Supreme Court in *Golden State Bottling Co. v. National Labor Relations Board* recognized successor liability under the National Labor Relations Act, explaining "the labor-law doctrine of successorship" was not as narrowly construed as the rule of corporate liability

(which restricts successor liability to:  explicit assumption by the acquirer, an acquirer who is "merely a continuation" of the predecessor, and transactions "entered into to escape liability").  414 U.S. 168, 176–87, 182 n.5 (1973); *see also Walling v. James V. Reuter, Inc.*, 321 U.S. 671, 674–75 (1944) (applying successor liability in a FLSA injunctive-relief action). Other circuits have followed suit.  *See, e.g.*, *Teed*, 711 F.3d at 764–65 (collecting cases); *Steinbach v. Hubbard*, 51 F.3d 843, 845–48 (9th Cir. 1995); *see also Cuervo v. Airport Servs., Inc.*, 984 F. Supp. 2d 1333, 1337–39 (S.D. Fla. 2013) (collecting cases and, predicting the Eleventh Circuit would agree, applying the federal-common-law standard).

And, this court recognized successor liability under Title VII of the Civil Rights Act of 1964, ruling successor liability in labor cases was "equally compelling in Title VII litigation".  *In re Nat'l Airlines, Inc.*, 700 F.2d 695, 698 (11th Cir. 1983). In so holding, this court explained that, based on Supreme Court precedent, "the test for successor liability is fact specific and must be conducted in light of the facts of each case and the particular legal obligation which is at issue . . . .  [T]here is, and can be, no single definition of successor which is applicable in every legal context.  A new employer, in other words, may be a successor for some purposes and not for others".  *Id.* (internal quotation marks omitted).

Therefore, this court's precedent supports, as stated by the seventh circuit, that "having a distinct federal standard applicable to federal labor and employment

11

statutes . . . [is] often . . . necessary to achieve the statutory goals [of those laws] because the workers will often be unable to head off a corporate sale by their employer aimed at extinguishing the employer's liability to them". *Teed*, 711 F.3d at 766. In other words, "successor liability is appropriate in suits to enforce federal labor or employment laws" to prohibit employers who violated those laws from avoiding liability by selling, or otherwise disposing of, their assets and dissolving, and the acquirer likewise does not assume liability in its purchase. *Id.* at 766–67. The FLSA, at minimum, protects workers by enforcing minimum wages and overtime regulations; it cannot be disputed that applying successor liability in this instance achieves that purpose. *Id.* at 767. Accordingly, as the district court concluded, we proceed under federal successor-liability law.

Appellants contend *Coffman v. Chugach Support Services, Inc.*, 411 F.3d 1231, 1237 (11th Cir. 2005), and *Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451, 1457 (11th Cir. 1985), neither of which concerns FLSA successor liability, demonstrate a transfer of tangible assets is required for successor liability. (Appellants also asserted at oral argument that the nurses' confession of error filed 10 March 2016 in a companion case, No. 16-10054, concerning which party is responsible for attorneys' fees and court costs for the supplemental proceeding at issue, is determinative here. As discussed at oral argument, that case is irrelevant to the question at hand.)

The district court's opinion in this action, distinguishing the decisions in *Coffman* and *Bud Antle*, is instructive. *Glausier*, 2015 WL 2020332, at *5 n.11. It explained that both decisions appear to "require a transfer of assets . . . to hold the acquiring corporation liable". *Id.* (quoting *Bud Antle*, 758 F.2d at 1457) (citing *Coffman*, 411 F.3d at 1237). And, "the basis of the decision" in each case was an absence of "common identity", as explained in *Bud Antle*, 758 F.2d at 1458–59, or, in other words, an absence of "continuity", as described in *Coffman*, 411 F.3d at 1237, in ownership and control between the prior and subsequent entities. *Glausier*, 2015 WL 2020332, at *5 n.11. In other words, there was no relationship between the predecessor and the successor. The district court here correctly concluded: "Both of these decisions are, therefore, factually distinguishable from this case on that critical basis". *Id.*

The seventh circuit in *Teed* held the federal successor-liability standard was satisfied, making the acquiring company liable for any FLSA violations by its predecessor. 711 F.3d at 765–69. Although not a rule 69 proceeding, the employees seeking overtime pay in a FLSA action in *Teed* sought to substitute their employer's acquirer for their employer, before the parties settled (subject to the result of the appeal). *Id.* at 764–65. The federal standard applied in *Teed* considers whether: (1) "the successor had notice of the pending" action; (2) "the predecessor . . . would have been able to provide the relief sought in the [action]

13

before the sale"; (3) "the predecessor could have provided the relief after the sale" (its "inability to provide relief favors successor liability"); (4) "the successor can provide the relief sought in the [action]"; and (5) "there is continuity between the operations and work force of the predecessor and the successor". *Id.* at 765–66.

C.

The facts at hand more than satisfy the federal standard for FLSA successor liability. The first factor, notice of the action, is clearly satisfied by the connection, through Arthur, of the three nurse-staffing entities. After this action was filed in June 2011 against his wholly-owned company A+ Nursetemps, Arthur formed Prime Staff Holdings that September, which, he testified, was for the sole purpose of purchasing Staff America and continuing his nurse-registry and healthcare-staffing business. The following month, Prime Staff Holdings completed its purchase of Staff America through a stock-purchase agreement for ten dollars and a two-and-a-half percent interest for the preceding owner. Arthur was listed as the registered agent for Prime Staff Holdings and Staff America, as well as the managing member, president, and sole principal of Prime Staff Holdings, which was a director of Staff America. Obviously, the court did not clearly err in finding Prime Staff Holdings and Staff America were apprised of the pending action against A+ Nursetemps.

14

For the second and third factors, it appears from the record that A+ Nursetemps would *not* have had the resources to satisfy the judgment before or after the transition. Those factors, as the district court concluded, are not determinative. *See id.* at 768. As explained in *Teed*, the predecessor's being unable to provide relief prior to the transition arguably weighs against applying successor liability because of the windfall the plaintiffs would receive; however, weighing against that consideration is the windfall the employer would enjoy when it avoids judgment by transitioning to a new company that has not expressly assumed its predecessor's liabilities. *Id.* at 765, 768. Regarding the third factor, the predecessor's inability to provide relief after the transition weighs in favor of successor liability. *Id.* at 766. Therefore, that the nurses could not have received the judgment from A+ Nursetemps either before or after the transition generally weighs in favor of applying successor liability to appellants.

The fourth factor—whether the successors can provide the relief sought by plaintiffs—is also satisfied. *See id.* at 766. The court did not clearly err in finding the companies have continued to be successful in the nurse-registry business and that, through a payment plan, they can provide the sought-after relief.

Finally, and most unfavorable to appellants, the satisfaction of the substantial-continuity factor weighs overwhelmingly in favor of imposing successor liability. A+ Nursetemps never filed for bankruptcy, as Arthur did personally, but it did

wind down its business operations while this action was pending in district court.

At the bench trial, Arthur testified that A+ Nursetemps ceased business as of 3

May 2013.  Just over two weeks later, the judgment in the DOL action was

rendered against A+ Nursetemps; about a month after the DOL judgment, the

judgment in this action was issued.  Moreover, as stated *supra*, Arthur testified,

and the district court found, that he created Prime Staff Holdings and Staff

America to continue his nurse-staffing business; in addition, and more important,

the court found he did so to avoid judgment in this action.

Furthermore, the companies also occupied the same office space for at least some

time.  Although A+ Nursetemps' business address was listed as 2008 Highway 44,

with Prime Staff Holdings and Staff America's as 2020 Highway 44, Arthur

testified that Staff America took over 2008 Highway 44  from A+ Nursetemps

shortly after it ceased operations.  Arthur sent *himself* a letter dated 3 May 2013,

the day A+ Nursetemps ceased operating and shortly before the judgments were

entered against A+ Nursetemps in the DOL, and this, action, requesting that A+

Nursetemps be allowed to "store its furniture and equipment assets in the front

office until a Receiver makes arrangements to pick it up".  Moreover, on 26 April

2013, Staff America signed a Sublease Agreement with A+ Nursetemps for three-

quarters of its 2008 Highway 44 location.

16

Additionally, Staff America performs the same services—as a nurse registry and medical-staffing agency—for many of the same clients as did A+ Nursetemps. As the district court found, Staff America enters into contracts with healthcare providers, as A+ Nursetemps did, to supply them with nurses and other healthcare workers in its registry.

Most crucial to the district court's findings regarding continuity, Staff America employed many of the same persons as did A+ Nursetemps. Of the 169 nurses employed at A+ Nursetemps, 111 were subsequently employed at Staff America between January 2013 and April 2014. In other words, approximately 66 percent of the nurses who worked for A+ Nursetemps began working for Staff America during that time. As the district court found, those employees constituted "the heart and soul asset or goodwill of the business itself", a staffing agency. *Glausier*, 2015 WL 2020332, at *4. And, as stated *supra*, Arthur owned and managed all three entities. Obviously, an extremely large part of the value of the company, a registry of healthcare workers, was its employees; it would be a mere shell without them.

Therefore, consistent with the district court's discussion of federal-common-law successor liability under the FLSA, continuity is satisfied especially by Staff America's employing 66 percent of A+ Nursetemps' former employees.

III.

17

For the foregoing reasons, the judgment resulting from the rule 69 proceeding is

AFFIRMED.