*See dissent*

Filed 5/17/19

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| PATRICK BARBER, | |
| Plaintiff and Appellant, | E068719 |
| v. | (Super.Ct.No. CIVRS1108683) |
| THE CALIFORNIA STATE PERSONNEL BOARD, | OPINION |
| Defendant and Respondent; | |
| DEPARTMENT OF CORRECTIONS AND REHABILITATION, | |
| Real Party in Interest and Respondent. | |

APPEAL from the Superior Court of San Bernardino County. Gilbert G. Ochoa, Judge. Affirmed.

Altshuler Berzon and Jeffrey B. Demain and Danielle E. Leonard for Plaintiff and Appellant.

California State Personnel Board, Alvin Gittisriboongul, Chief Counsel and Dorothy B. Egel for Defendant and Respondent.

Janie H. Siess for Real Party in Interest and Respondent.

I.

INTRODUCTION

This is plaintiff and appellant Patrick Barber's second appeal in this case and raises an issue of first impression.[1]  Upon remand from Barber's first appeal (*Barber I)*, defendant and respondent, the California State Personnel Board (SPB), awarded Barber a lump sum back pay award, which resulted in Barber incurring increased income tax liability.  SPB denied Barber's motion for recovery for increased tax liability.  The trial court upheld SPB's decision and denied Barber's petition for writ of mandamus.  Barber appeals the denial of his writ petition and motion for increased tax liability recovery.

Barber contends he is entitled to recover damages for incurring increased tax liability because his increased tax liability was caused by real party in interest and respondent, California Department of Corrections and Rehabilitation (CDCR), improperly terminating his employment.  Barber argues that awarding him such relief is consistent with the remedial statutory purpose of Government Code section 19584,[2] of making an improperly terminated employee whole by restoring the employee to the financial position he or she would otherwise have occupied had employment not been wrongfully interrupted.  We disagree.  Barber is not entitled to increased tax liability

---

[1]  Barber's first appeal was decided in the unpublished decision, *Barber v. California State Personnel Board* (Oct. 24, 2014, E057014 [nonpub.opn.] (*Barber I*)).

[2]  Unless otherwise noted, all statutory references are to the Government Code.

2

recovery under section 19584 or to such recovery as equitable relief, because such relief is not statutorily authorized. We therefore affirm the judgment denying such an award.

II.

FACTS AND PROCEDURAL HISTORY

We incorporate the undisputed facts summarized in *Barber I*, regarding Barber's employment history leading to his employer, CDCR, serving Barber with a notice of adverse action and terminating him in April 2009. The notice of adverse action notified Barber that he was dismissed from his position as a parole agent for alleged violations of section 19572 (inexcusable neglect of duty, dishonesty, discourteous treatment of the public or other employees, and behavior either during or outside of duty hours of such a nature to cause discredit to the appointing authority or the person's employment). SPB and the trial court concluded that CDCR's termination of Barber was proper. Barber appealed (*Barber I*).

On October 24, 2014, in *Barber I*, this court reversed the trial court's decision upholding Barber's termination, and ordered the trial court to issue a peremptory writ of mandate directing SPB to set aside its decision sustaining CDCR's dismissal of Barber and award him "any other relief to which he is entitled." This court concluded that the notice of adverse action did not provide Barber with sufficient notice of the workplace rules he allegedly violated or the specific manner in which the violation occurred. We therefore held in *Barber I* that, "[w]ithout that notice, he was deprived of his due process

3

right to prepare an effective defense against the charge and to argue the appropriate punishment."

SPB issued a resolution setting aside its previous April 2011 decision, and ordered CDCR to reinstate Barber and pay Barber all back pay and benefits that would have accrued had he not been terminated in April 2009. SPB further directed that if the parties were not in agreement on the amount of Barber's salary and benefits recovery, the matter was to be referred to the chief administrative law judge (ALJ) for a hearing. In April 2015, Barber was reinstated, and began working again and receiving salary and benefits.

Although as of October 2015, CDCR paid Barber approximately $500,000 in back pay (over $450,000 in back pay and over $230,000 in benefits), in January 2016, Barber submitted a request for additional recovery under section 19584 and a hearing. Barber asserted that, "due to the large lump sum back pay payment [Barber] received in 2015, he is now faced with a significantly greater tax burden than if he had been receiving his salary on a yearly basis and paying his taxes accordingly." Barber maintained that, as a consequence, CDCR had a duty to return Barber to the condition he would have been in had he not been dismissed and, as such, CDCR should reimburse Barber for his increased tax liability from being paid a lump sum back pay award.

At a prehearing/settlement conference, Barber and CDCR disagreed on whether Barber was entitled to additional reimbursement of wages to cover Barber's increased tax liability. The ALJ instructed the parties to brief the issue of whether Barber's increased tax liability was compensable under section 19584.

4

A. *Motion to Allow Increased Tax Liability Recovery*

In May 2016, Barber filed a motion to allow recovery for increased tax liability under section 19584 as an element of back pay. The Los Angeles Police Protective League joined Barber's motion as amicus curiae and filed a supporting amicus brief and reply. Barber asserted in his motion that the purpose of section 19584 is to make a wrongfully terminated employee whole. Barber argued that, in making him whole, CDCR was required to pay him for incurring approximately $145,000 in increased tax liability, caused by receiving the lump sum back pay award.

Barber noted that, "[p]rior to 1986, it was not uncommon for courts to disallow the award of increased tax liability in lump sum awards due to the availability of the averaging provisions of the Tax Code which eliminate nearly all of the excess liability that would otherwise result from a lump sum award. [Citation.] The 1986 Tax Reform Act, P.L. 99-514 (1986), however, repealed the income averaging provision of the old Revenue Code leaving all those receiving a lump sum award to suffer the consequences of additional tax liability." As a consequence, the Equal Employment Opportunity Commission (EEOC) and National Labor Relations Board (NLRB) have awarded compensation for increased tax liability resulting from lump sum back pay awards arising from discrimination claims. Barber argued that CDCR was required to pay him compensation for his increased tax liability because he would not be made whole without such recovery.

CDCR argued in its opposition that section 19584 does not authorize compensation for increased tax liability; SPB did not have jurisdiction to award compensation for increased tax liability; Barber failed to cite any supporting binding case law; and federal NLRB and EEOC case law does not support Barber's position because Barber's case does not involve discrimination and there is a split of nonbinding federal authority on whether damages for increased tax liability are recoverable.

B. *June 2, 2016, Hearing on Motion for Increased Tax Liability Recovery*

On June 2, 2016, an ALJ heard, telephonically, Barber's motion for increased tax liability recovery. No witness testimony or evidence was presented. Counsel for Barber and CDCR presented oral argument. Barber, through his attorney, argued that section 19584 provided for back pay "salary," in furtherance of making an employee whole after being wrongfully terminated. Barber's attorney acknowledged there was little, if any, state case law on the issue and section 19584 did not include any specific language authorizing broad equitable relief, as is included in Title VII of the Civil Rights Act. Barber's attorney argued that, nevertheless, the intent of section 19584 is to allow for such relief. Barber's attorney noted that Barber's claim was unusual because he received back pay for six years of salary. Usually, back pay is for a relatively short period of time, resulting in minimal increased tax liability. In addition, counsel argued that, before tax laws changed in 1986, receiving a lump sum back pay award was not a problem.

6

CDCR's attorney argued section 19584 did not allow for increased tax liability recovery because such relief is not salary or benefits. Counsel further argued the federal case law Barber relied on is inapplicable because it is founded on federal law which, unlike section 19584, contains language expressly allowing for broad equitable relief. CDCR's attorney stated that the legislature could amend the statute to allow for such relief or it could be provided for in the memorandum of understanding, which currently does not provide for increased tax liability recovery. The ALJ took the matter under submission and issued a written decision on June 16, 2016.

C. *SPB's June 16, 2016, Ruling on Barber's Motion*

The ALJ stated in its June 16, 2016, written decision that section 19584 does not mention recovery for increased tax liability. Furthermore, the terms "salary," "benefits," and "'special salary compensations'" do not encompass payment for increased tax liability. The ALJ also considered and rejected the proposition that SPB had broad equitable authority to make Barber whole, when section 19584 does not provide tax liability relief. The ALJ concluded SPB was not vested with statutory or equitable power to make Barber whole, beyond those remedies provided within the bounds of the legislative framework and parameters established by the state Legislature in the State Civil Service Act (§ 18500 et seq.). The ALJ recognized that section 19582, subdivision (a) of the State Civil Service Act provides authority for SPB to make Barber whole, but concluded such authority is limited by the statutory authority granted to SPB in section 19584. The ALJ noted that SPB did not have broad equitable authority to award tax

7

relief, unlike federal courts' broad equitable powers to allow offsets for federal tax consequences arising from awards under Title VII, including the ADEA[3] and ADA.[4] The ALJ concluded there was no case law supporting Barber's contention that SPB had authority to award him recovery for increased tax liability. The ALJ therefore found that SPB was not vested with statutory or equitable power to make Barber whole, beyond remedies provided within the bounds of the legislative framework and parameters established by the state Legislature in the State Civil Service Act. Accordingly, SPB denied Barber's motion for increased tax liability recovery.

D. *Barber's Writ Petition Challenging SPB's Denial of His Motion*

On August 5, 2016, Barber filed in the trial court a verified petition for writ of mandate under Code of Civil Procedure sections 1085 and 1094.5, challenging SPB's ruling denying him increased tax liability recovery. Barber included copies of his tax returns and tax tables for 2004 through 2015. Barber alleged that SPB erred in denying his motion for increased tax liability recovery under Government Code section 19584. Barber argued that the language in Government Code section 19584, stating "'other special salary compensations, if sufficiently predictable,'" should be construed as permitting recovery for increased tax liability. Barber also argued that his increased tax

_____

[3] Age Discrimination in Employment Act (ADEA). (29 U.S.C. §§ 216(b), 623(a)(1).)

[4] Americans With Disabilities Act (ADA). (42 U.S.C. §§ 12101-12213, 2000e-5(g)(1).)

liability was a "'predictable'" loss in actual back pay. Barber further asserted that the purpose of Government Code section 19584 was to make the reinstated employee whole and SPB had failed to do so by denying him tax liability recovery. Lastly, Barber asserted that California public employees should have the same rights to recovery for increased tax liability as private and federal employees. CDCR filed an answer to Barber's writ petition, and SPB filed opposition.

E. *June 16, 2017, Trial Court Hearing on Barber's Writ Petition*

On June 16, 2017, the trial court heard oral argument on Barber's writ petition. Barber, in propria persona, argued that his tax documentation showed that his total tax liability, had he received his annual salary during the six years he was dismissed from employment, would have totaled about $5,300, whereas his tax liability on his lump sum award is $161,000. He therefore must pay approximately $155,000 more in income tax. Barber said he made about $110,000 a year. As a consequence of his lump sum award, he was taxed at the highest rate, incurring $171,000 in state and federal taxes. Barber argued that his increased tax liability was not speculative relief. It could be calculated with sufficient accuracy. Barber added that he should not have to pay increased tax liability caused by CDCR wrongfully terminating him. Barber argued he should be made whole and should not be deprived of recovery for increased tax liability, when NLRB and EEOC claimants, and civilian employees making ADA and Department of Fair Employment and Housing claims can recover such relief. Barber noted that he did not submit his tax return documentation to the ALJ at the hearing on his motion for increased

9

tax liability recovery because the ALJ told him not to because his motion solely concerned a legal issue, and the ALJ was not going to address factual issues.

CDCR's counsel responded that NLRB and EEOC decisions are inapplicable because they do not involve administrative law, and Barber's case does not involve discrimination. CDCR's attorney further argued that whether Barber incurred increased tax liability was speculative because Barber lacked sufficient evidence proving his claim. In addition, CDCR's attorney argued that section 19584 does not include language allowing for increased tax liability recovery, and there is no supporting case law.

The trial court noted that both parties agreed there was no California case law directly on point. The trial court further noted that Barber's increased tax liability was ascertainable and that, if recoverable as a matter of law, the court could remand the matter to the ALJ for a hearing on the factual issue of the amount recoverable. The trial court took Barber's writ petition under submission and later that day denied it.

The court stated in its minute order that Barber "concedes that there is no binding authority under California case law." The court further stated: "The language of Section 19584 is clear in that increased tax liability is not an element of compensable salary or benefits under the code. If the legislature wanted to include that item, it could have clearly stated so in the statute. This Court is disinclined to do so. Cases applying section 19584 opine that an item is only compensable when it is of the same general nature or class of benefits. Tax liability is not a benefit, it is the opposite." Barber filed a notice of

10

appeal of the June 16, 2017, order.  On July 6, 2017, the trial court entered judgment denying Barber's writ petition.[5]

## III.

## STANDARD OF REVIEW

The parties agree this appeal concerns the purely legal issue of first impression, of whether Barber can recover increased tax liability damages under section 19584 or as equitable recovery for a constitutional due process violation.

"Our state Constitution contemplates that SPB shall be the forum in which civil service disciplinary cases are first adjudicated." (*Alameida v. State Personnel Bd.* (2004) 120 Cal.App.4th 46, 57.)  SPB is the state administrative agency that initially adjudicated Barber's dismissal and award of back pay and benefits.  SPB is """"created by, and derives its adjudicatory power from, the state Constitution.  (Cal. Const., art. VII, §§ 2 [membership and compensation of board], 3 ['(a) The board shall enforce the civil service statutes and, by majority vote of all its members, shall . . . review disciplinary actions']. . . .)  Under that constitutional grant, [SPB] is empowered to 'review disciplinary actions.'  In undertaking that review, [SPB] acts in an adjudicatory capacity. 'The [SPB] is an agency with adjudicatory powers created by the California Constitution.' [Citation.]  As such [SPB] acts much as a trial court would in an ordinary judicial proceeding.  Thus, [SPB] makes factual findings and exercises discretion on

---

[5] This court construed Barber's notice of appeal to have been taken from the July 6, 2017, judgment.

11

matters within its jurisdiction."""" (*Fisher v. State Personnel Bd.* (2018) 25 Cal.App.5th 1, 13.)

SPB's decision may be reviewed in the trial court by filing a petition for a writ of administrative mandate, which may be brought only "for the purpose of inquiring into the validity of any final administrative order or decision . . . ." (Code Civ. Proc., § 1094.5, subd. (a); see also *State Bd. of Chiropractic Examiners v. Superior Court* (2009) 45 Cal.4th 963, 974.) """"On review the decisions of [SPB] are entitled to judicial deference. The record must be viewed in a light most favorable to the decision of [SPB] and its factual findings must be upheld if they are supported by substantial evidence."""" (*Fisher v. State Personnel Bd.*, *supra*, 25 Cal.App.5th at p. 13.) "Where, as here, an appeal from administrative mandamus proceedings presents questions of law, our review is de novo." (*Alameida v. State Personnel Bd.*, *supra*, 120 Cal.App.4th at p. 52; see also *Pollak v. State Personnel Bd.* (2001) 88 Cal.App.4th 1394, 1404.)

IV.

PRINCIPLES OF STATUTORY CONSTRUCTION

In his appeal, Barber challenges the trial court's and SPB's interpretation of section 19584. Both the trial court and SPB construed section 19584 as not allowing recovery for increased tax liability caused by Barber receiving a lump sum back pay award. Our review of the trial court's ruling requires this court to interpret section 19584 de novo. (*Department of Corrections & Rehabilitation v. State Personnel Bd.* (2014) 227 Cal.App.4th 1250, 1256 (*Martin*).) We are thus required to apply an independent

12

standard of review to the issue of statutory construction raised in the instant appeal. (*Fisher v. State Personnel Bd.*, *supra*, 25 Cal.App.5th at p. 14.)  In doing so, "'[w]e give great deference to the agency's interpretation of statutes affecting issues within its administrative sphere.' [Citation.]  However, we 'do not necessarily defer to SPB's interpretations of the governing statutes.  [Citation.]  The judiciary takes ultimate responsibility for the construction of statutes, although according great weight and respect to the administrative construction such as is appropriate under the circumstances.' [Citation.]"  (*Martin*, *supra*, at p. 1256.)

When construing a statute, we apply the following well-settled principles of statutory construction.  In discerning the Legislature's intent, "'[t]he statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context.  If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs.  On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction.  In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy.' [Citation.]  '"If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose."  [Citation.] . . . "a construction making some words surplusage is to be avoided."  [Citation.]  "When used in a statute [words] must be construed in context, keeping in mind the nature and

13

obvious purpose of the statute where they appear." [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole.' [Citation.]" (*Martin*, *supra*, 227 Cal.App.4th at p. 1256.) "'"Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute."'" [Citation.]" (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1233.)

V.

CONSTRUING SECTION 19584

Barber agrees that increased tax liability recovery is not a benefit within the meaning of section 19584. Instead, Barber argues that increased tax liability recovery is "salary," as defined in section 19584. The current definition of "salary" was added to section 19584 by amendment in 1994 by Senate Bill No. 846 (1993-1994 Reg. Sess.) (Senate Bill 846). (Compare Stats. 1985, ch. 1195, § 6, p. 4051 with Stats. 1994, ch. 814, § 4, p. 4057; see also *Martin*, *supra*, 227 Cal.App.4th at p. 1259.)

The State Civil Service Act (§ 18500 et seq.) provides for compensation of employees who have been wrongfully discharged from state service. (*Swepston v. State Personnel Bd.* (1987) 195 Cal.App.3d 92, 95 (*Swepston*).) Section 19584 provides, in relevant part: "Whenever the board revokes or modifies an adverse action and orders that the employee be returned to his or her position, it shall direct the payment of salary and all interest accrued thereto, and the reinstatement of all benefits that otherwise would

14

have normally accrued. 'Salary' shall include salary, as defined in Section 18000, salary adjustments and shift differential, and other special salary compensations, if sufficiently predictable."

Section 18000 provides: "The salary fixed by law for each state officer, elective or appointive, is compensation in full for that office and for all services rendered in any official capacity or employment whatsoever, during his or her term of office, and he or she shall not receive for his or her own use any fee or perquisite for the performance of any official duty."

In addition, California Code of Regulations, Title 2, section 51.2 (regulation 51.2) states that "(A) 'Back pay' means the compensation Appellant would have received from Respondent if Appellant had not been subject to an adverse action, . . . or termination . . . , less any compensation Appellant earned or might reasonably have earned in private or public employment during the period the action or rejection was improperly in effect. [¶] (B) Back pay shall not include overtime compensation that the Appellant may have earned from Respondent during the time period that Appellant was not working for Respondent due to the adverse action." (Regulation 51.2, subd. (i)(1)(A).)

Back pay serves to make an employee whole for the employer's wrongdoing. (*Davis v. Los Angeles Unified School Dist. Personnel Com.* (2007) 152 Cal.App.4th 1122, 1133.) ""The appropriate standard for the measurement of a back pay award is to take the difference between the actual wages earned and the wages the individual would

have earned in the position that, but for the [employer's wrongful conduct], the individual would have [held].'"'" (*Id*. at p. 1134, quoting *Mason v. Association for Independent Growth* (E.D.Pa. 1993) 817 F.Supp. 550, 553-554 and *Gunby v. Pennsylvania Elec. Co.* (3d. Cir. 1988) 840 F.2d 1108, 1119.) The State Civil Service Act statutes and related regulations limit the back pay relief recoverable to lost salary and benefits. There is no mention in sections 18000 or 19584 or regulation 51.2 of any entitlement to recovery for increased tax benefits.

In addition to adding the definition of "salary" in section 19584, the April 1994 legislative bill amending section 19584 deleted overtime compensation as a part of "back salary." (Assem. Com. on Public Employees, Retirement and Social Security, Analysis of Sen. Bill No. 846 (1993-1994 Reg. Sess.) as amended Apr. 28, 1994, p. 2; see Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 846 (1993-1994 Reg. Sess.) Aug. 12, 1994, pp.5-6.) The Legislature did not define what it meant by "compensation." (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117.) "Where different words or phrases are used in the same connection in different parts of a statute, it is presumed the Legislature intended a different meaning." (*Ibid.*) We therefore presume the words "salary" and "compensation" differ in meaning.

The Legislature included in its definition of "salary" "other *special salary compensations*, if sufficiently predictable." (§ 19584, italics added.) The common meaning of "compensation" is "payment." (Webster's 10th Collegiate Dict. (1993) p. 234.) "[C]ompensation . . . earned" means earned payment. (*Martin*, *supra*, 227

16

Cal.App.4th at p. 1257.) "Section 19584's use of the word 'compensation' unambiguously sweeps broadly and encompasses all *earned* payments." (*Id.* at p. 1258, italics added.) Increased tax liability is neither earned nor a payment. Therefore, it is not "salary" or "special salary compensation" within the meaning of section 19584.

We disagree with the dissent's broad construction of the section 19548 language, "other special salary compensations," as encompassing gross-up recovery for increased tax liability. The dissent does so by broadly construing the word, "compensation," and parsing the term from the preceding words, which limit recoverable compensation to "special salary." These descriptive terms preceding and modifying "compensation" narrow the type of compensation encompassed by the language, "other special salary compensations."

Even though the term, "compensation," alone, can be construed broadly to include compensation that is not salary, we conclude the legislature intended to limit the scope of the term used within the section 19584 definition of *salary* by preceding the term, "compensation," with the limiting terms, "special salary." By doing so, the statute narrows the category of recoverable compensation to income paid for work performed. We therefore conclude section 19584, as currently written, does not allow gross-up recovery for increased tax liability as a recoverable category of damages. Furthermore, it is not within this court's authority to add to section 19584 this additional category of recoverable compensation, because it is not encompassed by the statutory language, "other special salary compensation."

We also disagree with the dissent's view that Barber's increased tax liability constitutes "sufficiently predictable" salary compensation. (§ 19584.) Barber's increased tax liability is not "predictable." We recognize that it is foreseeable that back pay awards will be taxed, and there normally is no tax exemption or ability to spread tax liability beyond the year the lump sum award is received. (*Clemens v. CenturyLink Inc.* (2017) 874 F.3d 1113, 1116 (*Clemens*); *Comm'r v. Schleier* (1995) 515 U.S. 323, 327; 26 U.S.C.S. § 104(a)(2) [restricting income tax exclusion for personal injury awards to those "received . . . on account of personal physical injuries or physical sickness."].) As a consequence, "a lump-sum award will sometimes push a plaintiff into a higher tax bracket than he would have occupied had he received his pay incrementally over several years." (*Clemens*, *supra*, 874 F.3d at p. 1116.) But at the time of the wrongful termination, it is unpredictable as to whether this will occur, because increased tax liability turns on a multitude of factors, including the employee's unique financial situation at the time the lump sum award is received, the amount of the lump sum award, applicable tax exemptions and deductions, the employee's previous and current tax brackets, the past and current tax laws, and the length of time it takes to resolve the reinstatement claim. An employee's increased income tax burden, derived from receiving back pay in a lump sum, is attenuated and collateral to the wrongful discharge and reinstatement of the employee.

In addition to the plain meaning of the language in section 19584 not supporting recovery for increased tax liability, the statute's history also does not support such relief. The court in *Martin* provides a detailed discussion of the history of section 19584, enacted in 1945 and amended most recently in 1994. (*Martin*, *supra*, 227 Cal.App.4th at pp. 1259-1261.) The history of section 19584 reflects that there has not been any analysis, contemplation, or intent by the legislature to provide reinstated employees with recovery for increased tax liability. Allowing such recovery would likely lead to imposing a new unanticipated financial burden on the State and its taxpayers.

The legislative history shows that section 19584 was amended in 1994 for the purpose of clarifying the meaning of "salary" and the scope of back pay recovery. The Assembly Commission on Public Employees' analysis described Senate Bill 846, amending section 19584 as: "Defines 'back salary' to mean [such] compensation items as merit salary adjustments, shift differentials and other special differentials or compensation if the back pay is sufficiently predictable. The current version of this bill deletes overtime compensation as a part of 'back salary.'" (Assem. Com. on Public Employees, Retirement and Social Security, Analysis of Sen. Bill No. 846, *supra*, as amended Apr. 28, 1994, p. 2; see Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 846, *supra*, Aug. 12, 1994, pp. 5-6; see also *Martin*, *supra*, 227 Cal.App.4th at p. 1260.)

19

The Assembly Ways and Means Commission analysis of Senate Bill 846 added that, "[e]xpanding the definition of benefits to include back pay for employees who win adverse action appeals *would not result in significant new costs*. This would merely codify current practice." (Analysis of Sen. Bill No. 846, *supra*, as amended Apr. 28, 1994, italics added; see also *Martin*, *supra*, 227 Cal.App.4th at p. 1260.) Because significant new costs were not anticipated, it is unlikely the Legislature contemplated or intended that the new language defining "salary" would include increased tax liability recovery. Otherwise, the legislative budgetary analysis would likely have mentioned the anticipated increased cost of allowing increased tax liability recovery.

Until the final August 26, 1994, amendment of Senate Bill 846, the relevant provisions of the bill were described by the Senate Rules Committee under the title, "Reinstatement, 'make whole.'" The penultimate analysis stated: "Existing law (Sec. 19584) authorizes the payment of salary and accrued interest and the reinstatement of benefits for a time period determined by SPB. It is within SPB's jurisdiction to make the employee 'whole' based on the facts of each case. [¶] This bill would add to the 'back salary' definition such compensation items as: [¶] a. merit salary adjustments, [¶] b. shift differentials and other special differentials or compensation if the back pay is sufficiently predictable. [¶] This bill also adds to the definition of 'benefits,' those benefits provided by collective bargaining agreements, state or department rules or practices." (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 846,

20

*supra*, Aug. 12, 1994, p. 5; see also *Martin*, *supra*, 227 Cal.App.4th at p. 1260.)

Increased tax liability recovery was not included in the definition of "back salary."

The Senate Rules Commission's final bill analysis described the bill amending section 19584 as: "Defines salary for purposes of the law concerning reinstatement of an employee [to] include salary adjustments and shift differential, and other special salary compensation, if sufficiently predictable." (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 846, *supra*, as amended Aug. 29, 1994; see also *Martin*, *supra*, 227 Cal.App.4th at p. 1260.)

This legislative history of section 19584 does not indicate that the Legislature intended that section 19584, as amended, include recovery for increased tax liability arising from a lump sum back pay award. While there is mention in the analyses of section 19584 of intent to make a reinstated employee whole by paying back pay and benefits, the language and history of the statute do not support the conclusion that the Legislature intended that making the employee whole included paying the employee's increased tax liability. Had the legislature intended to allow for such recovery, the legislature could have expressly added it.

In effect, Barber urges this court to judicially amend section 19584 to add recovery not provided in section 19584. "Doing so 'invite[s] this court to legislate a statutory amendment by implication in violation of the separation of powers. Courts routinely construe statutes enacted by the Legislature in their role as interpreters of the law. . . . We may not usurp the function of the Legislature by adopting an amendment to

21

the same statute by implication where no amendment was intended.'" (*Blankenship v. Allstate Ins. Co.* (2010) 186 Cal.App.4th 87, 100, quoting *Bullard v. California State Automobile Assn.* (2005) 129 Cal.App.4th 211, 221.) Barber's request for increased tax liability recovery can be more appropriately addressed by the state Legislature by amending section 19584, or by Congress and/or the state Legislature enacting tax laws eliminating income tax liability for lump sum back pay awards, or by the CDCR employees' union and the Department of Personnel Administration, through negotiations, adding increased tax liability recovery to the memorandum of understanding covering CDCR employees.

We conclude Barber was made whole to the extent permissible under section 19584, and SPB was not authorized to provide any additional recovery beyond that, even if it leaves Barber with uncompensated collateral losses. Just as with lost overtime, increased tax liability is not recoverable under section 19584. (Regulation 51.2, subd. (i)(1)(B); *Swepston*, *supra*, 195 Cal.App.3d at p. 94.)

In *Swepston*, *supra*, 195 Cal.App.3d at page 94, the court held that the reinstated CDCR plaintiff was not entitled to recover lost overtime. After SPB revoked the plaintiff's termination, the parties stipulated that the plaintiff was entitled to back salary and vacation pay. The sole issue at the SPB hearing was whether the plaintiff was entitled to receive overtime compensation the plaintiff would have earned during the period of wrongful dismissal.

In reaching its holding, the court in *Swepston* explained that "historically the term 'salary' has been used in the State Civil Service Act to denominate compensation of a fixed sum for all services rendered. (§ 18000.) With respect to the compensation of state employees for work performed in excess of the normal work week, the Legislature used the phrase 'overtime compensation.' (See § 19844.) We presume that 'salary' was intended to have the same meaning in the State Civil Service Act wherever used. [Citation.] Hence, as used in section 19584, salary is exclusive of 'overtime compensation.'" (*Swepston*, *supra*, 195 Cal.App.3d at pp. 95-96.)

The *Swepston* plaintiff conceded that the word "salary" as used in section 19584 did not include compensation for overtime, nor could such a construction of the word be supported. The plaintiff also acknowledged there was no statutory provision for overtime compensation in the statute in effect when the *Swepston* plaintiff was dismissed and reinstated. Nevertheless, the plaintiff argued he was entitled to overtime compensation under the amendment to section 19584 in 1985, which reflected "an intent to 'make whole' those employees whose adverse action is revoked or modified." (*Swepston*, *supra*, 195 Cal.App.3d at p. 96.) The *Swepston* court disagreed, concluding it could not rely on the amendatory language because section 19584 in 1985, did not apply retroactively to the plaintiff. (*Swepston*, *supra*, at p. 97.) The *Swepston* court added that, even if the court could rely on the section 19584 amendment, under the ordinary rules of statutory construction, nothing in the amended language of section 19584 authorized SPB to compensate for overtime.

23

Similarly, in the instant case, we conclude section 19584 does not authorize recovery for increased tax liability resulting from a lump sum award for back pay. We recognize that *Swepston* is founded on a former version of section 19584. We nevertheless conclude that the *Swepston* analysis applies here, because section 19584 is fundamentally the same as it was when *Swepston* was decided, with the exception of adding, for clarification purposes, the definition of "salary." (*Swepston*, *supra*, 195 Cal.App.3d at p. 97.)

The instant case presents even stronger justification for denying recovery for increased tax liability, because increased tax liability is not salary or benefits, as defined in the post-*Swepston* version of section 19584, amended in 1994. Rather, increased tax liability is a collateral consequence of receiving a lump sum award, as is lost overtime compensation. (*Swepston*, *supra*, 195 Cal.App.3d at pp. 95-98.) This court is not free to rewrite section 19584 to add increased tax liability recovery, when such inferred intention is not supported by the statute's language or legislative history. (*Swepston*, *supra*, at p. 97.)

Barber argues that even if section 19584 does not expressly provide authority for recovery of increased tax liability damages, he nevertheless is entitled to such recovery based on language in section 19582, authorizing SPB to "render the decision that in its judgment is just and proper." (*Martin*, *supra*, 227 Cal.App.4th at p. 1258.) This language in section 19582 does not authorize SPB to exceed its statutory authority under

24

section 19584 governing the calculation of an award of back pay and benefits. (*Martin*, *supra*, at p. 1258.)

In *Martin*, the plaintiffs argued that SPB's decision rejecting an overtime offset from the plaintiffs' back pay award should be upheld, because section 19582 grants SPB broad authority to do whatever is "just and proper." The court in *Martin* disagreed, concluding that "*[n]othing in section 19582 permits the Board to exceed the statutory authority granted to it in section 19584*. The portion of section 19582 that [the plaintiffs] rely upon reads: 'Hearings may be held by the board, or by any authorized representative, but the board shall render the decision that in its judgment is just and proper.' (§ 19582, subd. (a.)) The clear meaning of this provision is that even if the hearing is held before an authorized representative rather than the Board, it is the Board that makes the 'just and proper' decision." (*Martin*, *supra*, 227 Cal.App.4th at p. 1258, italics added.) The *Martin* court thus rejected the proposition that section 19582 provides SPB with broad authority to award relief beyond the statutory constraints and authority provided in section 19584. As in *Martin*, Barber is not entitled to recovery under section 19582 beyond that which is permitted under section 19584.

VI.

EQUITABLE RELIEF UNDER FEDERAL LAW

Barber argues that even if section 19584 does not authorize recovery for increased tax liability, he is nevertheless entitled to such recovery as equitable relief under federal and state case law, based on CDCR's violation of Barber's due process rights. We

disagree.

A. *Federal Case Law Regarding Increased Tax Liability Recovery*

There is a split among the federal courts as to whether a plaintiff is entitled under federal law to increased tax liability recovery resulting from a lump sum award. In the 2017 Ninth Circuit Court of Appeals decision, *Clemens*, *supra*, 874 F.3d 1113, the plaintiff employee prevailed on a Title VII discrimination claim. The plaintiff argued that, in addition to back pay and benefits, he was entitled to be made whole by receiving recovery for increased tax liability from receiving a lump sum back pay award. The *Clemens* plaintiff asserted that "the taxman's expanded cut effectively denies him what Title VII promises—full relief that puts Clemens where he would be had the unlawful employment discrimination never occurred." (*Id*. at p. 1116.) The *Clemens* court vacated the lower court ruling denying the plaintiff recovery for increased tax liability and remanded the matter for further proceedings. (*Id.* at p. 1115.)

The *Clemens* court noted that it was not the first tribunal to consider whether to award the plaintiff employee damages for increased tax liability. The Third, Seventh, and Tenth Circuits "held that district courts have the discretion to 'gross up' an award to account for income-tax consequences." (*Clemens*, *supra*, 874 F.3d at p. 1116; see *Sears v. Atchison, Topeka & Santa Fe Ry. Co.* (10th Cir. 1984) 749 F.2d 1451, 1456 [court upheld award for increased tax liability, given a district court's "wide discretion in fashioning remedies to make victims of discrimination whole."]; *Eshelman v. Agere Systems, Inc.* (3d Cir. 2009) 554 F.3d 426, 440-441 [terminated employee, who sued

26

employer under the ADA, is entitled to award offsetting increased tax liability the employee would incur from receiving a lump sum back pay award]; *E.E.O.C. v. N. Star Hosp., Inc.* (7th Cir. 2015) 777 F.3d 898, 904 [court in race discrimination and retaliatory employment termination lawsuit joined "the Third and Tenth Circuits in affirming a tax-component award in the Title VII context."].)

The *Clemens* court acknowledged that in *Dashnaw v. Pena* (D.C. Cir. 1994) 12 F.3d 1112, the D.C. Circuit rejected an award for increased tax liability. The *Dashnaw* court explained: "Dashnaw also argues that the District Court should have granted him additional compensation to help cover the higher taxes he will have to pay because he will receive his backpay in a lump sum rather than as salary paid out over a period of years. Absent an arrangement by voluntary settlement of the parties, the general rule that victims of discrimination should be made whole does not support 'gross-ups' of backpay to cover tax liability. We know of no authority for such relief, and appellee points to none. Given the complete lack of support in existing case law for tax gross-ups, we decline so to extend the law in this case. We therefore reject Dashnaw's request for additional compensation to cover his tax liability." (*Id*. at p. 1116.)

Similarly, in *E.E.O.C. v. Federal Express Corp.* (M.D. Pa. 2005) 537 F.Supp.2d 700, a sex discrimination case, the federal district court noted: "No decision of the Third Circuit authorizes the amendment of a judgment to account for negative tax consequences that result from a lump sum award of front or back pay. Courts within the circuit are divided on the issue. *Compare O'Neill v. Sears, Roebuck & Co.* 108 F.Supp.2d 443, 448

27

(E.D.Pa. 2000) (finding increased tax liability damages appropriate, and noting plaintiff supported her request with testimony from financial consultant) with *Anderson v. CONRAIL*, 2000 U.S. Dist LEXIS 15978 at *14-15 (E.D. Pa. Oct. 26, 2000)[6] (refusing to adjust award to account for tax consequences because such amendment would be speculative, noting plaintiff had not supported her request with any evidence) and *Shovlin v. Timemed Labeling Sys., Inc.*, 1997 U.S. Dist. LEXIS 2350 at *7 (E.D. Pa. Feb. 28, 1997).[7]" (*Id*. at p. 719.)

The *Clemens* court maintained that the court in *Dashnaw v. Pena*, *supra*, 12 F.3d 1112 ignored the Title VII equitable underpinnings, as well as the Tenth Circuit's decision in *Sears v. Atchison, Topeka & Santa Fe Ry. Co.*, *supra*, 749 F.2d at page 1456, and the Supreme Court's reasoning in *Albemarle Paper Co. v. Moody* (1975) 422 U.S. 405, 408, 415-417, 436 (employees are entitled to equitable relief, including back pay, in class action brought against employer for injunctive relief against acts violative of equal employment opportunity provisions of Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972);[8] *Loeffler v. Frank* (1988) 486 U.S. 549, 551-554, 558 (discharged male Postal Service employee, who brought action against Postmaster General under Title VII of the Civil Rights Act of 1964,

---

[6] Not reported in Federal Supplement Second.

[7] Not reported in Federal Supplement Second.

[8] Title 42 United States Code section 2000e et seq. (1970 ed. & Supp. III).

alleging discriminatory discharge on basis of sex, is entitled to recover prejudgment interest as part of back pay); and *Franks v. Bowman Transp. Co., Inc.* (1976) 424 U.S. 747, 750, 757, 762 (in Title VII race discrimination action, the prevailing plaintiff employees were entitled to retroactive seniority relief under the Civil Rights Act). (*Clemens*, *supra*, 874 F.3d at p. 1117.)

The court in *Clemens* agreed with the analysis of the Third, Seventh, and Tenth Circuits, holding that the district court may, in its discretion, award an employee gross-up damages for increased tax liability from a lump sum award. (*Clemens*, *supra*, 874 F.3d at p. 1117.) The *Clemens* court rejected the employer's argument that such monetary relief is legal, not equitable, concluding that the argument is "wrong under Title VII case law." (*Ibid.*; see also *Lutz v. Glendale Union High Sch.* (9th Cir. 2005) 403 F.3d 1061, 1068-1069 ["[B]ack pay remains an equitable remedy to be awarded by the district court in its discretion."]; *EEOC v. Joe's Stone Crab, Inc.* (S.D.Fla.1998) 15 F.Supp.2d 1364, 1380 [Title VII sex discrimination claim, in which federal district court held that "a district court, in the exercise of its discretion, may include a tax component in a lump sum back pay award to compensate prevailing Title VII plaintiffs"].)

*Clemens* and its progeny of similarly decided federal cases allowing increased tax liability recovery, are brought under federal legislation expressly authorizing broad equitable relief. The federal cases include discrimination claims brought under Title VII, against a private or federal employer. Unlike the state Legislature enacting section 19584, "Congress armed the courts with full equitable powers in Title VII cases."

29

(*EEOC v. General Tel. Co.* (9th Cir. 1979) 599 F.2d 322, 334-335; accord, *Clemens*, *supra*, 874 F.3d at p. 1116; *Albemarle Paper Co. v. Moody*, *supra*, 422 U.S. at p. 418.)

In another relatively recent federal discrimination case against the U.S. Postal Service and postmaster general, *Graham v. Brennan*, (U.S. Dist. Ct., D. Ore., Sept. 26, 2017, 1:16-cv-00242-CL) 2017 WL 5505800 (*Graham*),[9] the court upheld increased tax liability recovery for a lump sum front and back pay award but rejected increased tax liability recovery based on the lump sum compensatory damages award. The sole issue was whether the Postal Service was required to reimburse the plaintiff for her increased tax liability from receiving the lump sum award for compensatory damages. The *Graham* court acknowledged the issue was one of first impression but noted that in *O'Neill v. Sears, Roebuck and Co.*, *supra*, 108 F.Supp.2d 443, which involved an ADEA claim, the court held that the plaintiff was entitled to enhancing damages to offset tax consequences of receiving a lump sum payment of front and back pay, but not for compensatory damages. (*Graham*, *supra*, 2017 WL 5505800 [at p. 2] ["Plaintiff is entitled to an award for the increased tax liability she suffered because she received her back pay as a single lump-sum payment, as this pushed her into a higher tax bracket than she was in during her work life."].)

The *Graham* court held that "Plaintiff paid more of her salary in taxes than she otherwise would have and, consequently, was put in a worse financial position than she would have been in absent Defendant's conduct. Hence, in order to make her whole,

---

[9] Not reported in the Federal Supplement.

Defendant must reimburse Plaintiff for the cost of the negative tax consequences suffered as a result of making this payment in one lump sum." (*Graham*, *supra*, 2017 WL 5505800 [at p. 3].)

The *Graham* court, however, rejected the plaintiff's argument that she was entitled to equitable relief for increased tax liability from receiving a lump sum compensatory damages award, because Congress mandated that the plaintiff's compensatory damages be treated the same as any other type of taxable income. (*Graham*, *supra*, 2017 WL 5505800 [at p. 3].) "If Congress wished there to be a difference, it would have said so, as it did with regard to damages 'on account of personal physical injuries or physical sickness[.]' 26 U.S.C. § 104(a)(2). Instead, 'Congress explicitly decided that noneconomic damages were to be taxable when they are attributable to nonphysical injury and Congress placed this tax burden on the plaintiff.' [Citation.]" (*Ibid*.; accord, *Chuong Van Pham v. Seattle City Light* (2007), 159 Wn. 2d 527, 537; 26 U.S.C. § 104(a)(2).) The *Graham* court added that there was nothing in the judgment award mandating the manner in which the defendant was to pay out the compensatory damages award. Therefore, unlike the lump sum back pay award, the plaintiff had the option of reducing her tax liability for the compensatory damages award by negotiating a payment schedule that minimized her tax burden. (*Graham*, *supra*, [at p. 4].)

In rejecting the *Graham* plaintiff's contention that she was entitled to recovery for increased tax liability arising from her compensatory damages award, the *Graham* court stated that, "while the Court may have wide discretion in fashioning an equitable award,

31

this discretion does not permit the Court to circumvent the clear intent of Congress. And, here, as explained, Congress has decided not only to treat such damages as taxable income but also to place the burden of paying the necessary taxes on Plaintiff." (*Graham*, *supra*, 2017 WL 5505800 [at p. 4].)

The federal decisions allowing for increased tax liability recovery are distinguishable because they are founded on federal legislation that includes language expressly allowing for broad equitable relief. Section 19584 does not include such language. Therefore, Barber is not entitled to equitable relief, where none is authorized.

B. *State Case Law Regarding Awards for Constitutional Rights Violations*

Barber also cites state case law, including *Ofsevit v. Trustees of California State University & Colleges* (1978) 21 Cal.3d 763, *Wilkerson v. City of Placentia* (1981) 118 Cal.App.3d 435, for the proposition the court and SPB have authority to award recovery for increased tax liability as equitable relief based on CDCR's due process violation. These cases are neither dispositive nor on point.

In *Ofsevit v. Trustees of California State University & Colleges*, *supra*, 21 Cal.3d 763, the defendant trustees of the California State University improperly denied the plaintiff reappointment as an untenured lecturer based on his involvement in union organization activities, in violation of his First Amendment free speech rights. The California Supreme Court held in *Ofsevit* that the plaintiff was entitled to reinstatement and damages, including lost benefits and net loss of salary. (*Id.* at pp. 775-776.)

In discussing whether the plaintiff in *Ofsevit* was entitled to back pay, the Supreme Court discussed in a footnote the public policy of making a reinstated employee whole: "We note that a plethora of statutory provisions both in California and elsewhere demonstrates a general policy in favor of full back pay awards even in the absence of constitutional violations.  Thus, for example, under the National Labor Relations Act, even an at-will employee who is improperly dismissed is entitled to an award of full back pay from the date of the improper dismissal to the date of his reinstatement.  (29 U.S.C. § 160(c).)  As the United States Supreme Court explained in *NLRB v. Rutter-Rex Mfg. Co.* (1969) 396 U.S. 258, 263:  '[T]he purpose of the remedy is clear.  "A back pay order is a reparation order designed to vindicate the public policy of the statute by making the employees whole for losses suffered on account of an unfair labor practice." [Citation omitted.]'  [¶]  Numerous California statutes in the Education Code and in other areas provide for similarly comprehensive back pay remedies." (*Ofsevit v. Trustees of California State University & Colleges*, *supra*, 21 Cal.3d at p. 777, fn. 14.)

While *Ofsevit* states that public policy supports making a reinstated employee whole by paying back pay and benefits, there is no mention of requiring payment of recovery for increased tax liability caused by a lump sum back pay award or providing recovery beyond back pay and benefits, which are statutorily authorized.  *Ofsevit v. Trustees of California State University & Colleges*, *supra*, 21 Cal.3d 763 thus does not resolve the issue raised in the instant case of whether the court or SPB has equitable authority or authority under the state and/or the federal Constitutions to award recovery

33

for increased tax liability caused by a lump sum back pay award. Likewise, the courts in *Barber* and *Wilkerson* do not address this issue.

The court in *Wilkerson* held that the plaintiff employee was entitled to reinstatement and back pay for the city's discharge of the plaintiff without full substantive and procedural due process. (*Wilkerson v. City of Placentia*, *supra*, 118 Cal.App.3d at pp. 443-444.) "California courts have consistently held that a public employee who has been deprived unlawfully of his position is entitled to recover the full amount of the salary which accrued to him from the date of his unlawful discharge to the date of his reinstatement." (*Id.* at p. 443.) The issue of whether the plaintiff was also entitled to recovery for increased tax liability was not raised or considered in *Wilkerson*. Equitable relief also was not discussed. *Wilkerson* is therefore not dispositive as to whether an employee is entitled to relief beyond that provided for in section 19584.

Under well-established rules of constitutional construction, we conclude neither federal nor state law provides authority for awarding Barber increased tax liability recovery. "Unlike the federal Constitution, which is a grant of power to Congress, the California Constitution is a limitation or restriction on the powers of the Legislature. [Citations.] Two important consequences flow from this fact. First, *the entire law-making authority of the state, except the people's right of initiative and referendum, is vested in the Legislature, and that body may exercise any and all legislative powers which are not expressly or by necessary implication denied to it by the Constitution.* [Citations.] In other words, 'we do not look to the Constitution to determine whether the

34

legislature is authorized to do an act, but only to see if it is prohibited.' [Citation.] [¶]

Secondly, *all intendments favor the exercise of the Legislature's plenary authority*: 'If

there is any doubt as to the Legislature's power to act in any given case, the doubt should

be resolved in favor of the Legislature's action. Such restrictions and limitations

[imposed by the Constitution] are to be construed strictly, and are not to be extended to

include matters not covered by the language used." (*Methodist Hosp. of Sacramento v.

Saylor* (1971) 5 Cal.3d 685, 691, italics added; accord, *State Personnel Bd. v.

Department of Personnel Admin.* (2005) 37 Cal.4th 512, 523.)

The state constitutional provision at issue here says that SPB "shall enforce the

civil service statutes and, by majority vote of all its members, *shall* prescribe

probationary periods and classifications, adopt other rules authorized by statute, and

*review disciplinary actions*." (Cal. Const., art. VII, § 3, subd. (a), italics added; accord,

*State Personnel Bd. v. Department of Personnel Admin.*, *supra*, 37 Cal.4th at p. 523.)

SPB's authority is limited by the state Constitution and state statutory law. Statutory law

limits relief ordered by SPB to that which is stated in section 19584. The state and

federal Constitutions do not provide any authority to provide additional equitable or

monetary relief for increased tax liability in the instant case. Barber therefore is not

entitled to any relief beyond that which is statutorily authorized in section 19584.

We conclude, as the court in *Martin* did, that "[t]he federal authorities that [the

plaintiffs] cite are not pertinent here. Our task is to construe specific language in a

California statute. [The plaintiffs] do not suggest that any of these cases involved an

interpretation of statutory language like that in section 19584." (*Martin*, *supra*, 227 Cal.App.4th at p. 1258.)  The trial court therefore did not err in affirming SPB's decision denying Barber increased tax liability recovery.  There is no federal or state case, constitutional provision, or statutory law that supports awarding Barber such recovery.[10]

VII.

DISPOSITION

The judgment is affirmed.  CDCR and SPB are awarded their costs on appeal.

CERTIFIED FOR PUBLICATION

CODRINGTON

J.

I concur:

McKINSTER

Acting P. J.

---

[10] We recognize *Economy v. Sutter East Bay Hospitals* (2019) 31 Cal.App.5th 1147, which addresses gross-up damages in a different context, was recently decided on February 4, 2019, *before* oral argument on April 2, 2019.  Neither party mentioned this case during oral argument.  *Sutter* is not dispositive because it does not involve termination of a CDCR employee subject to relief under section 19584.

[*Barber v. California State Personnel Board et al.*, E068719]

Slough, J., Dissenting.

This appeal boils down to whether we should interpret the phrase "other special salary compensations" as allowing the California State Personnel Board (SPB) and courts to award reinstated government employees "gross-up" back pay awards to ensure the employees end up with the same after-tax net income they would have had if they hadn't been wrongly terminated in the first place.  The majority says no.  I disagree and write separately to explain why.

The need for gross-up awards arises for wrongfully terminated employees who are reinstated and recover more than a year's salary and benefits in a lump sum.  Under current state and federal tax law, all income paid in a year, including lump sum back pay awards, are taxed in the year the employee gets paid.  Because the federal and state income tax regimes are progressive—higher incomes are taxed at a higher rate—a large lump sum payment can cause the reinstated employee to owe substantially more in taxes than they would have owed had they received the same income over the course of uninterrupted employment.  (See generally, Ireland, Thomas, Journal of Legal Economics 51, *Tax Consequences of Lump Sum Awards in Wrongful Termination Cases* (Oct. 2010) pp. 51-52.)  As a result, such employees take home less income than they would have if they'd never been wrongly terminated.

In this case, for example, Barber was paid all at once for six years of salary and benefits.  Though he was not permitted to put on evidence showing how much he paid, he

1

estimates he paid about $145,000 more in taxes than he would have paid had he worked steadily through those six years and paid taxes on the income along the way. The question we face is who bears the burden of this artifact of the tax laws, injured employees or the government employers who wronged them? Put another way, does the statute designed to return reinstated government employees to the financial state they would have been in if they hadn't been wrongfully terminated allow the award of gross-up payments needed to accomplish that end?

Because this is a question of statutory construction, I begin with the language of the provision governing the compensation of reinstated government employees. "Whenever the board revokes or modifies an adverse action and orders that the employee be returned to his or her position, it shall direct the payment of salary and all interest accrued thereto, and the reinstatement of all benefits that otherwise would have normally accrued. 'Salary' shall include salary, as defined in Section 18000, salary adjustments and shift differential, and other special salary compensations, if sufficiently predictable." (Gov. Code, § 19584, unlabeled statutory citations refer to this code.)

Because "salary" is defined by the statute, we don't apply the ordinary meaning of the term. Instead, following the definition, we treat "salary" as having the following components: salary as defined in section 18000, "salary adjustments," "shift differential," and "other special salary compensations, if sufficiently predictable." Section 18000 defines salary as "[t]he salary fixed by law." Salary adjustments are incremental increases in salary—merit-based, automatic, or discretionary—that an

2

employee may receive within the salary range established for a position. (§§ 19829 [salary ranges]; 19832 [merit salary adjustments]; 19834 [automatic salary adjustments]; 19836 [adjustments to address inequity, recruiting problems, extraordinary qualifications].) Shift differential pay is a premium paid to employees for working certain nonstandard and less desirable shifts. (*Huntington Memorial Hospital v. Superior Court* (2005) 131 Cal.App.4th 893, 898; *Vector Resources, Inc. v. Baker* (2015) 237 Cal.App.4th 46, 51.)

None of these components of salary could, even arguably, extend to allow the kind of gross-up award Barber seeks. Only the category "other special salary compensations" may be broad enough to encompass such relief. Thus, the question we face is whether payments to an employee to compensate them for additional taxes they're required to pay on a lump sum back pay award qualifies as a special salary compensation. My disagreement with the majority reduces to a single word. They interpret "compensations" as referring to payments an employee earns *for work*. Since gross-up awards are not payments earned through work, but rather payments ordered to compensate for income lost by operation of the tax laws, the majority concludes such awards aren't authorized by the statute.

I take a different view of the meaning of the word "compensations." I believe the word is broad enough to cover compensating the employee for work *and* for injuries related to the wrongful termination. Thus, I interpret "special salary compensations" as

3

being a catchall provision that allows the SPB and courts to fashion appropriate remedies to ensure the employee is made whole.

Dictionaries confirm the point. Compensation means "the act or state of compensating, as by *rewarding someone for service* or by *making up for someone's loss, damage, or injury* by giving the injured party an appropriate benefit." (Dictionary.com <https://www.dictionary.com/browse/compensation> [as of May 13, 2019], italics added.) It also means "something given or received as an equivalent *for services*, debt, *loss, injury, suffering*, lack, etc.; indemnity." (*Ibid.*, italics added.) A dictionary published in 1991, roughly contemporaneous with the amendment that inserted the phrase "special salary compensations," contains the same ideas. Compensation is "something that constitutes an equivalent or recompense," and recompense is "to give something to by way of compensation (as *for a service rendered* or *damage incurred*)." (Webster's 9th New Collegiate Dict. (1991) pp. 268, 984, italics added.)

These definitions plainly encompass the idea of income paid for work performed and the idea of payments made to make up for an injury. Black's Law Dictionary agrees, though it breaks the two meanings into separate entries. "1. Remuneration and other benefits received in return for services rendered; esp., salary or wages . . . 2. Payment of damages, or any other act that a court orders to be done by a person who has caused injury to another. In theory, compensation makes the injured person whole." (Black's Law Dict. (8th ed. 2004) p. 301.)

4

How do we decide which is correct in this statutory provision?  I don't believe we need to decide.  The term itself is broad and general, as the government parties acknowledge.  I conclude the plain meaning of the statute includes both senses of the word compensation.  The term is designed as a true catchall.  There may be other forms of special salary payments not captured by the specific categories of statutory salary, salary adjustments, and shift deferential pay.  The statute allows the award of such payments, if they're predictable.  Similarly, there are remedial awards that may help ensure a wronged employee receives the same net salary they would have received if not terminated.  A gross-up award to account for increased tax liability falls into the latter bucket, and I believe it is a form of compensation authorized by the statute.  The fact that the term is plural—"special salary compensations"—fits neatly with this interpretation.

The majority responds by doubling down on their interpretation—literally.  Their primary argument is that the word "compensation"—which they interpret to mean only "payment for work"—is modified by the word "salary."  The argument is somewhat opaque, but I believe they mean to say that since "salary" means "payment for work," that narrows the meaning of "compensation" to "payment for work" too.  (Maj. opn. p. 17.)  I find this unpersuasive, primarily because it reads the concept of salary into the phrase twice, making the modifier—"salary"—redundant.  On their interpretation, "salary" doesn't so much *modify* "compensation" as *repeat* it.  The interpretation I prefer doesn't suffer the same defect.  I believe the word "salary" limits the term "compensations"—in the sense of damages received to make up for injuries—to those

5

payments made to compensate for injuries to the amount an employee received in salary payments. Since the tax laws reduce the net *salary* a plaintiff receives, gross-up awards that *compensate* for such an injury are "special *salary* compensations."

The interpretation I propose is also preferable because it effectuates the purpose of the statute. Section 19584's plain aim is making whole employees injured by their employer's misconduct or mistake. "Whenever the board revokes or modifies an adverse action and orders that the employee be returned to his or her position, it shall direct the payment of salary and all interest accrued thereto, and the reinstatement of all benefits that otherwise would have normally accrued." As our Supreme Court has recognized, about this provision as well as other back pay provisions, "[t]he purpose of the remedy is clear. 'A back pay order is a reparation order designed to vindicate the public policy of the statute by making the employees whole for losses suffered on account of an unfair labor practice.'" (*Ofsevit v. Trustees of Cal. State University & Colleges* (1978) 21 Cal.3d 763, 777, fn. 14, quoting *NLRB v. Rutter-Rex Mfg. Co.* (1969) 396 U.S. 258, 263.) The legislative history, though silent on the meaning of "special salary compensations," confirms this purpose. "It is within SPB's jurisdiction to make the employee 'whole' based on the facts of each case." (Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 846 (1993-1994 Reg. Sess.) Aug. 12, 1994.)

There's no question Barber suffered a loss to his net salary because of his wrongful termination. So, ordering a gross-up award to make up for that loss is necessary to return him to the position he would have been in had he not been wronged.

6

Interpreting the statute as allowing such an award is therefore preferable because it advances the statute's make-whole purpose. (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1233 ["'Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute'"].) As the U.S. Court of Appeals for the Third Circuit explained in reaching the same conclusion under the federal employment discrimination statute, "Our conclusion is driven by the 'make whole' remedial purpose of the antidiscrimination statutes. Without this type of [tax gross-up] equitable relief in appropriate cases, it would not be possible 'to restore the employee to the economic status quo that would exist but for the employer's conduct.'" (*Eshelman v. Agere Sys., Inc.* (3d Cir. 2009) 554 F.3d 426, 442.) While section 19854's award provision is different than the federal statute's provision, both provide ample room for the deciding agency or court to consider whether a tax liability gross-up award is appropriate under the facts of the cases before them. I believe Barber's is a case where a gross-up award is appropriate.

The majority complains I would expand the court's authority by "add[ing] to section 19584 this additional category of recoverable compensation." (Maj. opn. at p. 17.) This rhetoric is empty and unnecessary. It is our job as a court to interpret statutes in a way that is true to their plain meaning and puts their purpose into effect. (*Searle v. Allstate Life Ins. Co.* (1985) 38 Cal.3d 425, 449.) Where the text and the purpose support a broad interpretation, we should follow the Legislature's lead.

Adopting a hyper-narrow interpretation of such a statutory provision—as the majority does here—isn't a recognition of the limits of our authority, but an erroneous trimming of the statute, in this case one which leaves the purpose of the statute on the cutting room floor.

The government respondents argue allowing gross-up awards would have far-reaching consequences for the state budget. "The statewide implication of imprinting upon section 19584 an obligation by State agencies to make payments to State employees a premium or 'gross up' to cover those employees' increased tax liabilities is presently incalculable, but assuredly significant." I'm not so sure. As I explained above, the need for a gross-up award is likely to arise only in cases where the employee obtained a lump sum back pay award covering a period of years, perhaps many years. While there are such cases, Barber's is unusual in that he was kept out of his job for six years and then compensated for the injury in a single payment. It seems unlikely such cases are numerous enough to cause problems for the California budget. But it's certain that denying gross-up awards to reinstated government employees like Barber will make a significant impact on their individual budgets.

Finally, there's no reason to think proving the amount of a tax liability gross-up award will be speculative. Back pay awards are backwards looking and figuring out the tax consequences is a technical problem, solvable within a reasonable degree of certainty. (See Ireland, Thomas, Journal of Legal Economics 51, *Tax Consequences of Lump Sum*

8

*Awards in Wrongful Termination Cases*, *supra*, at pp. 52-53.)  As a result, such awards are very likely to be "sufficiently predictable," as required by the statute.

The majority disagrees tax gross-up awards would be predictable, but only by equivocating.  The point of the restriction is to bar recovery for injuries that are too speculative from the point of view of a factfinder at trial.  (*Department of Corrections & Rehabilitation v. State Personnel Bd.* (2014) 227 Cal.App.4th 1250, 1264 [holding it was sufficiently predictable a reinstated employee would have received merit salary increases to include them in the damages for wrongful termination].)  But the majority reads "sufficiently predictable" as limiting recovery to injuries that are foreseeable by the wrongdoer at the time they violate a plaintiff's constitutional rights.  That's the wrong focus entirely, and is out of keeping with the general rule in tort recovery that foreseeability is immaterial to tort damages.  (6 Witkin, Summary of Cal. Law (11th ed. 2018) Torts, § 1343, p. 649.)

Barber estimated his increased tax liability in proceedings below.  However, because neither the SPB nor the trial court adjudicated the matter, I would reverse the order denying Barber's writ of mandate and order the trial court to direct the SPB to hold a hearing on the appropriate amount of a gross-up award in his case.

SLOUGH             

J.
