Filed 12/1/20  Guillermo v. Los Angeles County Dept. etc. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| MARICELA GUILLERMO, | B296925 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. BS159674) |
| LOS ANGELES COUNTY DEPARTMENT OF HEALTH SERVICES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mary H. Strobel, Judge.  Affirmed.

Rosen Marsili Rapp, Howard Z. Rosen, Amanda Pitrof, for Plaintiff and Appellant.

Hausman & Sosa, Jeffrey M. Hausman, Larry D. Stratton, for Defendant and Respondent.

---

In 2012, the Los Angeles County Department of Health Services (the Department) terminated appellant Maricela Guillermo's employment. Guillermo successfully petitioned the trial court for a writ of mandate, and the court ordered that she be reinstated and compensated pursuant to Los Angeles County Code section 6.20.100 (section 6.20.100). Guillermo was awarded back pay, which she received as a lump sum, and because of the lump-sum nature of the payment, incurred an additional tax liability of $226,862. Guillermo requested that the trial court award her a "gross-up" to neutralize the tax increase.[1] The trial court denied the motion, concluding that section 6.20.100 does not authorize such an award.

On appeal, Guillermo contends that, pursuant to section 6.20.100, the Department must compensate her for the increased tax liability she incurred through no fault of her own. The Department contends that we lack jurisdiction to hear Guillermo's appeal, but that, even if the court's order is appealable, section 6.20.100 does not authorize a gross-up award to compensate Guillermo for tax consequences over

---

[1] A "gross-up" is an award to a prevailing employee of an additional sum of money to compensate for the increased tax burden created by a back pay award made in a lump sum.

which it has no control (and which have changed over the years).

We agree with Guillermo that we have jurisdiction over the appeal. However, we affirm the trial court's order, because we conclude that section 6.20.100 does not permit a trial court to award a wrongfully terminated employee a gross-up payment.

## FACTS AND PROCEDURAL BACKGROUND

In April 2009, the Department hired Guillermo in the position of Pharmacy Services Chief II. On September 14, 2012, the Department discharged Guillermo based on her "insubordination and refusal to follow instructions" as well as her "failure to maintain confidentiality." She appealed to the Civil Service Commission (the Commission).

After an administrative hearing, the hearing officer found that Guillermo was "'not a model, but in general, a problem as well as a problematic employee who tends to go rogue in performing her duties, nonetheless, [the Department] failed to present evidence sufficient . . . to meet [the] preponderance of the evidence [standard]' necessary to support a discharge." The hearing officer concluded that "'[w]hile the Department failed on technical grounds to support its disciplinary action of discharging [Guillermo], nevertheless it was successful in clearly establishing that [Guillermo] was an extremely difficult employee to manage[,] and . . . an out-of-control employee . . . . [T]he Hearing

3

Officer is compelled to recommend that [Guillermo] be reinstated to employment with the Department without any back pay and not necessarily to her former position as Pharmacy Services Chief II.'" On October 7, 2015, the Commission sustained the discharge, stating: "'The Department was successful in clearly establishing that [Guillermo] was an extremely difficult employee to manage and that she marches to the beat of her own drum. The portrait of [Guillermo] as an out-of-control employee persuades the Commission to sustain the Department."

On December 22, 2015, Guillermo petitioned for writ of administrative mandate. On January 31, 2017, the court remanded the matter to the Commission to "make additional findings or clarify the findings on which it relied to reach its decision to discharge" Guillermo.

On November 29, 2017, following remand proceedings, the Commission reinstated Guillermo, and imposed a 30-day suspension.

On January 19, 2018, the trial court entered judgment granting the writ of mandate, and ordering the Department to reinstate Guillermo without loss of seniority and to compensate her pursuant to section 6.20.100, with interest thereon at a rate of 7 percent per annum from the date of her discharge, September 12, 2012, through the date of payment. The trial court further ordered the Department to provide Guillermo with "all of the fringe benefits that she would have had but for her termination until her reinstatement less the period of her 30-day suspension . . . ."

In June 2018, the Department reinstated Guillermo, and the following month, paid her $655,849.96 in back pay and $180,691.27 in interest, most of which relates to years prior to 2018.

On November 9, 2018, Guillermo filed a motion in the trial court for an order directing the Department to compensate her for the excess tax liability she incurred as the result of the lump-sum reinstatement payments.  As authority to make such a compensation award, the motion relied solely on section 6.20.100, which provides:  "In the event an employee is reduced, suspended and/or discharged, and upon appeal the civil service commission or a court having jurisdiction does not sustain such reduction, suspension and/or discharge, the employee shall be entitled to his base rate of salary, vacation and sick leave as if such unsustained reduction, suspension or discharge had not been invoked.  However, in no event shall an employee be entitled to any salary or credit for vacation and sick leave for any period of time covered by a suspension which is sustained or for any period of time waived by an employee as a condition to the granting of a continuance of his civil service or judicial hearing."  Based on the calculations of a CPA and expert in tax planning and preparation, Guillermo contended her federal and state tax liability was $226,864 greater than the amount she would have paid in each tax year had she not been discharged.

In a written order filed on February 19, 2019, the trial court denied the motion for excess tax liability

compensation, concluding that the "express language of the ordinance says nothing about payment of tax liability. Even as modified by the phrase 'as if such unsustained . . . discharge had not been invoked,' the terms 'base rate of salary,' 'vacation,' and 'sick leave' cannot reasonably be interpreted to include payment of tax liability."

Guillermo appealed to this court on April 15, 2019.

## DISCUSSION

### *This Court Has Jurisdiction*

The Department contends that we lack jurisdiction to hear the appeal because Guillermo's post-judgment motion seeking gross up relief neither enforced nor stayed the trial court's judgment, and she did not file her appeal until approximately 15 months after the judgment was entered. We disagree.

Code of Civil Procedure section 1097 authorizes a trial court to "make any orders necessary and proper for the complete enforcement" of a writ of mandate. It is a "'well settled rule that the court which issues a writ of mandate retains continuing jurisdiction to make any orders necessary and proper for the complete enforcement of the writ.' [Citations.]" (*King v. Woods* (1983) 144 Cal.App.3d 571, 578.) Code of Civil Procedure section 904.1, subdivision (a)(2), in turn, permits an appeal from an order to enforce a

judgment.  (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651–652.)

The Department relies on *APRI Ins. Co. v. Superior Court* (1999) 76 Cal.App.4th 176 (*APRI*), which holds that a trial court loses jurisdiction to reconsider its ruling after entry of judgment.  (*Id*. at p. 180.)  *APRI* is inapposite.  The trial court did not reconsider its ruling in this case.  Guillermo's motion for relief could not have been made until the Department determined the amount of her back pay; accordingly, the motion was an effort to enforce the underlying writ of administrative mandate under Code of Civil Procedure section 1097.  The trial court had jurisdiction to hear the motion, and the notice of appeal, which was filed within 60 days of the court's order, was timely.  (Cal. Rules of Court, rule 8.104(a)(1)(B) & (C).)  We have jurisdiction to hear the appeal.[2]

### Section 6.20.100 Does Not Permit Gross Up Awards

Guillermo received her back salary payment from the Department in a lump sum in 2018, which pushed her into a

---

[2] The Department also argues that Guillermo failed to file a Government Code claim in connection with her motion.  The argument is simply another version of the primary jurisdictional argument—that the motion for a gross-up was an attempt to modify rather than to enforce the judgment.  Because we conclude that the motion was a lawful attempt to enforce the judgment under section 6.20.100, the argument necessarily fails.

higher tax bracket than would have applied if she had been paid the salary over each of the years to which a particular back pay amount applied (2012 to 2018). As a result, she suffered greater tax liability than she would have if she had been paid over time as an employee. She argues that section 6.20.100 requires that she be paid as if her termination had not occurred—i.e. the Department must compensate her to cover the additional tax liability. We reject Guillermo's contention, because the plain language of the ordinance does not authorize gross up payments.

"Where, as here, an appeal from administrative mandamus proceedings presents questions of law, our review is de novo." (*Alameida v. State Personnel Bd.* (2004) 120 Cal.App.4th 46, 52.) We employ the same rules to interpret both statutes and ordinances. (*Chaffee v. San Francisco Public Library Com.* (2005) 134 Cal.App.4th 109, 114.) In construing [an ordinance], our task is to discern the drafters' intent. (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190 [statutory interpretation].) We start with the ordinance's words, "assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the [drafters] meant what [they] said, and the [ordinance's] plain meaning governs." (*Ibid.*) Our role "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is,

if possible, to be adopted as will give effect to all." (Code Civ. Proc., § 1858.)

We again quote the language of section 6.20.100, as it is key to the question we are asked to decide. "In the event an employee is reduced, suspended and/or discharged, and upon appeal the civil service commission or a court having jurisdiction does not sustain such reduction, suspension and/or discharge, the employee shall be entitled to his base rate of salary, vacation and sick leave as if such unsustained reduction, suspension or discharge had not been invoked. However, in no event shall an employee be entitled to any salary or credit for vacation and sick leave for any period of time covered by a suspension which is sustained or for any period of time waived by an employee as a condition to the granting of a continuance of his civil service or judicial hearing." (§ 6.20.100.)

Guillermo argues that section 6.20.100 unambiguously provides for a gross-up award because it entitles a reinstated employee to her "base rate of salary . . . as if" she had not been discharged, which necessarily encompasses tax neutralization, where appropriate. Without a gross-up, Guillermo would receive significantly less than the taxable salary she would have received had she never been discharged.

The Department contends that "base rate of salary" refers to one part of an employee's overall compensation— direct monetary compensation at a monthly rate. The Department argues that the meaning is reflected in section

9

6.26.040, the County of Los Angeles Salary Table, which lists the monthly rates for positions that are on a one-step, two-step, three-step, four-step, and five-step rate of compensation. (See L.A. County Code, § 6.26.010.) The Department asserts that the base rate of salary is unaffected by the tax liability an employee incurs.

We agree with the Department that the language of section 6.20.100 is unambiguous. The section lists "base rate of salary, vacation and sick leave," which are separate elements of an employee's compensation. If there were any ambiguity in the plain meaning of "base rate of salary," it would be easily resolved by consulting the County of Los Angeles Salary Table included in the Los Angeles County Code, which lists monthly rates of monetary compensation as "salary."

We are not persuaded that the commonly understood definition of "base rate of salary" renders the ensuing phrase, "as if such . . . discharge had not been invoked," superfluous. "[A]s if such . . . discharge had not been invoked" clearly sets forth the time period for which the employee is to be paid—i.e., the period between the date of the unsustained discharge and the date of the employee's reinstatement. The subsequent sentence in section 6.20.100 reinforces this interpretation, as it creates an exception for the days that an employee is suspended or waives time within the relevant time period. ("However, in no event shall an employee be entitled to any salary or credit for vacation and sick leave for any period of time covered by a

10

suspension which is sustained or for any period of time waived by an employee as a condition to the granting of a continuance of his civil service or judicial hearing.") When "salary" is read as commonly defined, there is no overlap with the phrase "as if such . . . discharge had not been invoked," and full effect is given to all of the language in section 6.20.100. (*Medical Board v. Superior Court* (2001) 88 Cal.App.4th 1001, 1013 [courts are to construe language in a manner that gives effect to all parts of a statute where possible].)

If the Los Angeles County Board of Supervisors (Board of Supervisors) had intended for section 6.20.100 to include payment of tax liability it would have expressly said so, or incorporated catch-all language authorizing the court to provide other equitable relief.[3] Section 6.20.100 does not expressly provide for a gross up or vest the court with

_____

[3] At the invitation of the court, both parties submitted letter briefs on the significance of section 5.25.055 of the Los Angeles County Code, which provides that a reinstated employee receive a gross-up in connection with the Deferred Compensation and Thrift Plan. The parties agree that section 5.25.055 does not shed light on the interpretation of section 6.20.100. We therefore deny the parties' requests for judicial notice of the legislative history of section 5.25.055 and the County's related motion to present additional evidence.

equitable powers that would permit it to award a gross up.[4] Guillermo points to no authority holding that a court has the authority to award a gross up based on statutory language as precisely limited as section 6.20.100.[5]

_____

[4] We previously granted Guillermo's request for judicial notice of various ordinances relating to the legislative history of section 6.20.100. We hereby deny Guillermo's additional request, deferred to this panel, to take judicial notice of certain email correspondence between appellant's counsel and the county's customer service center regarding an ordinance (No. 10,034) missing from the county's archives.

[5] Guillermo cites to authority, including *Ofsevit v. Trustees of California State University & Colleges* (1978) 21 Cal.3d 763, 777, fn. 14, for the general proposition that the purpose of a back pay order is to make employees whole for losses suffered as a result of unfair labor practices. This general proposition, however, does not address the specific issue of compensation for increased tax liability under section 6.20.100. Guillermo relies on several federal antidiscrimination cases that have held that a trial court has the authority to award a gross up where a discharged employee has been reinstated. (*Clemens v. CenturyLink Inc.* (9th Cir. 2017) 874 F.3d 1113, 1115–1117 (*Clemens*); *EEOC v. Northern Star Hospitality, Inc.* (7th Cir. 2015) 777 F.3d 898, 903–904 (*Northern Star Hospitality*); *Eshelman v. Agere Sys.* (3rd Cir. 2009) 554 F.3d 426, 441–443 (*Eshelman*); *Sears v. Atchison, T. & S. F. R. Co.* (10th Cir. 1984) 749 F.2d 1451, 1456–1457 (*Sears*).) These cases are inapposite. Guillermo was not terminated for a discriminatory reason, and section 6.20.100 does not authorize "any other equitable

As Guillermo concedes, the single California case to which she cites that addresses gross up damages, *Economy v. Sutter East Bay Hospitals* (2019) 31 Cal.App.5th 1147 (*Economy*), does so in a different context. There, the Court of Appeal held that a hospital was required to provide an anesthesiologist with appropriate peer review procedures and due process protections prior to terminating his ability to practice, and that the anesthesiologist was entitled to lost income damages for period in which the discipline he suffered was invalid. (*Id.* at pp. 1156–1162.) The *Economy* court further held that the anesthesiologist's expert's testimony was sufficient to support award of damages for tax neutralization. (*Id.* at pp. 1163–1164.) Notably, in *Economy*, the hospital argued only that the evidence in support of the trial court's award of damages for tax neutralization was speculative, not that an award for tax neutralization damages was unauthorized. (*Ibid.*) Thus, the appellate court did not need to address the issue before us to resolve that matter.

relief as the court deems appropriate," as the statutory language implicated in those cases did. (*Clemens*, *supra*, at p. 1115–1117 [Title VII]; *Northern Star Hospitality*, *supra*, at pp. 903–904 [Title VII]; *Eshelman*, *supra*, at pp. 440–443 [Americans with Disabilities Act]; *Sears*, *supra*, at pp. 1456–1457 [Title VII].) Likewise, Guillermo's examples of gross-up awards in the private sector for unlawful discharge under the National Labor Relations Act (29 U.S.C. § 158(a)(1) & (3)) do not inform the inquiry with respect to section 6.20.100.

The only case in California that addresses whether a statute authorizes the award of a gross up to a reinstated public employee is *Barber v. State Personnel Bd.* (2019) 35 Cal.App.5th 500 (*Barber*). There, a divided court found that, under Government Code section 19584, an employee who was reinstated by the State Personnel Board was not entitled to recover the amount equal to the increased tax liability resulting from a lump sum payment. As *Barber* addressed whether gross ups were authorized under Government Code section 19584,[6] and not section 6.20.100, it, too, is not directly on point. Significantly, however, the court held that increased tax liability was not encompassed in the term "salary" as used in that statute, because tax liability "is neither earned nor a payment." (*Id.* at p. 513.) Although the plain language of section 6.20.100 clearly conveys that compensation for increased tax liability is not

---

[6] Government Code section 19584 provides, in relevant part: "Whenever the board revokes or modifies an adverse action and orders that the employee be returned to his or her position, it shall direct the payment of salary and all interest accrued thereto, and the reinstatement of all benefits that otherwise would have normally accrued. 'Salary' shall include salary, as defined in Section 18000, salary adjustments and shift differential, and other special salary compensations, if sufficiently predictable."

contemplated, *Barber*'s holding lends additional support to the Department's arguments.[7]

There are policy arguments from the perspective of a successful claimant that would support requiring the Department to pay a gross up award and there are policy arguments from the perspective of the Department (which has no control over tax rules adopted by the Federal and State governments) that counsel in favor of a contrary conclusion. The policy debate is not for us to resolve. The Board of Supervisors has not authorized gross up payments in Section 6.20.100, and if the Board of Supervisors thinks a different rule would be more just, it is the Board of Supervisors that must change it.

---

[7] Notably, in *Barber*, the dissent interpreted Government Code section 19584's reference to "special salary compensations" as "being a catchall provision that allows . . . courts to fashion appropriate remedies to ensure the employee is made whole." (*Barber, supra,* 35 Cal.App.5th at p. 527 (dis. opn. of Slough, J.).) The dissent found the word "compensation" "broad enough to cover compensating the employee for work *and* for injuries related to the wrongful termination." (*Ibid*.) Section 6.20.100 contains no similar catch-all category.

## DISPOSITION

The judgment is affirmed.  Respondent Los Angeles County Department of Health Services is awarded its costs on appeal.


MOOR, J.

I concur:


BAKER, J.

*Guillermo v. Department of Health Services – B296925*


**RUBIN, P. J. concurring and dissenting:**


### *BACKGROUND*

Under Los Angeles County Code section 6.20.100 (section 6.20.100) a wrongfully discharged employee "shall be entitled to his base rate of salary . . . as if such unsustained . . . discharge had not been invoked." In my view, the plain purpose of this ordinance and the remedy of back pay in general is to make the employee whole "for losses suffered on account of an unfair labor practice." (*Ofsevit v. Trustees of Cal. State University & Colleges* (1978) 21 Cal.3d 763, 777, fn. 14.) The question raised by this appeal is whether a statute designed to compensate an employee for losses incurred due to her wrongful termination allows a "gross-up" award in order to accomplish that end?

The availability of a "gross-up" award gained particular significance after the federal tax code eliminated income averaging. (See 1986 Tax Reform Act, P.L. 99-514, § 141 (1986).)[1] Income averaging had allowed taxpayers to allocate income on an average basis over several years, rather than in a single year. (See Schmalbeck, *Income Averaging After Twenty Years: A Failed*

---

[1] Current section 6.20.00 was enacted in 1968 as section 245 and amended several times before federal income averaging was repealed in 1986. (See Ord. 6222, § 245 (1968, added by Ord. 9577, § 19); Ord. 6222, § 245 (1972, amended by Ord. 10273, § 24); Ord. No. 6222, § 245 (1979, amended by Ord. 12022, § 28); Ord. No. 6222, § 6.20.100 (1982, amended by Ord. 84-0149P, § 3.)

*Experiment in Horizontal Equity* (1984) 1984 Duke L.J. 509, 510–512.) The amendment to the Internal Revenue Code had the effect of " 'leaving all those receiving a lump sum award to suffer the consequences of additional tax liability.' " (*Barber v. State Personnel Bd.* (2019) 35 Cal.App.5th 500, 507 (*Barber*), review denied Aug. 21, 2019; see Polsky & Befort, *Employment Discrimination Remedies and Tax Gross Ups* (2004) 90 Iowa L. Rev. 67, 77.) Employees who thereafter received a lump sum back pay award were not able to allocate a portion of their award to the respective tax years when the lost earnings would have been earned. The result was that, under a progressive income tax system, a lump sum award likely pushes an employee into a higher tax bracket than she would have occupied if she had received her pay regularly over several years. (See generally Ireland, *Tax Consequences of Lump Sum Awards in Wrongful Termination Cases*, 17 J. Legal Econ. 51, 51-52 (2010).)

Over the years, the term "gross-up" has slowly crept into our legal lexicon but is found in only one published California appellate opinion, *Barber*, *supra*, 35 Cal.App.5th 500.[2]

---

[2] Several federal circuits have held that a district court has the discretion to award a gross-up in Title VII suits. (See *Sears v. Atchison, T. & S. F. R., Co.* (10th Cir. 1984) 749 F.2d 1451; *Eshelman v. Agere Sys., Inc.* (3d Cir. 2009) 554 F.3d 426; *EEOC v. Northern Star Hospitality, Inc.* (7th Cir. 2015) 777 F.3d 898; and *Clemens v. CenturyLink Inc.* (9th Cir. 2017) 874 F.3d 1113.) Title VII provides in part that "the court may . . . order . . . any other equitable relief as the court deems appropriate." No similar provision is found in section 6.20.100.

### *SECTION 6.20.100*

Section 6.20.100 broadly provides general authority for an award that compensates an employee for the salary lost due to wrongful termination.  Under section 6.20.100, a wrongfully terminated employee is "entitled to his base rate of salary . . . as if . . . such discharge had not been invoked."  A reading of section 6.20.100 that limits an award to only an employee's "base rate of salary" fails to take into account the "as if" clause, essentially rendering the latter phrase superfluous.  (See *People v. Arias* (2008) 45 Cal.4th 169, 180 ["Significance should be given, if possible, to every word of an act.  [Citation.]  Conversely, a construction that renders a word surplusage should be avoided."].)

By couching "base rate of salary" in terms of "as if . . . such discharge had not been invoked," the ordinance provides for compensation to an employee for all salary truly lost, not just her monthly gross pay.  The gross-up achieves that purpose without creating a windfall for those wrongfully terminated employees like appellant whose court and administrative proceedings drag on for years.  Instead, those who receive a lump sum back pay award covering a period of years receive the same net-of-tax salary they would have received had there been no wrongful discharge.

The majority reads the "as if" clause differently, but the construction I give to the ordinance effectuates the make-whole purpose of the statute.  As our Supreme Court has reminded, the purpose of the remedy of back pay is to make the employee whole "for losses suffered on account of an unfair labor practice." (*Ofsevit v. Trustees of Cal. State University & Colleges*, *supra*, 21 Cal.3d at p. 777, fn. 14.)  In cases like appellant's, without a

3

gross-up an employee is not restored to the same financial situation as she was before termination.  Instead, many wrongfully discharged employees will effectively receive significantly less than their base rate of salary.[3]

### BARBER v. STATE PERSONNEL BD.

The Department relies almost exclusively on *Barber, supra,* 35 Cal.App.5th 500, the only case in California that addresses whether a statute authorizes the award of a gross-up to a reinstated public employee.  *Barber* concluded that Government Code section 19584 gave no such authorization.  That statute provides, in part:  "Whenever the [State Personnel Bd.] revokes or modifies an adverse action and orders that the employee be returned to his or her position, it shall direct the payment of salary and all interest accrued thereto, and the reinstatement of all benefits that otherwise would have normally accrued.  'Salary' shall include salary, as defined in Section 18000, salary adjustments and shift differential, and other special salary compensations, if sufficiently predictable."  The *Barber* majority concluded that the statute limited "backpay relief recoverable to lost salary and benefits," and construed "special salary compensation" as referring only to "income paid for work performed." (*Barber, supra,* at pp. 513–514.)  The Barber court found that, because increased tax liability was "neither earned

---

[3]      I am not persuaded that the phrase, "as if such . . . discharge had not been invoked" is necessary to set forth "the time period for which the employee is to be paid—i.e., the period between the date of the unsustained discharge and the date of the employee's reinstatement."  (Maj. Opn., pp. 8-9.)  Without the "as if," the ordinance would be read temporally in the same manner.

4

nor a payment," a reinstated employee could not be awarded a gross-up.  (*Id.* at p. 513.)

The *Barber* court also held that a determination of increased tax liability was not "sufficiently predictable" under the statute because "at the time of the wrongful termination, it is unpredictable as to whether this will occur, [as] increased tax liability turns on a multitude of factors, including the employee's unique financial situation at the time the lumpsum award is received, the amount of the lumpsum award, applicable tax exemptions and deductions, the employee's previous and current tax brackets, the past and current tax laws, and the length of time it takes to resolve the reinstatement claim."  (*Barber*, *supra*, 35 Cal.App.5th at p. 514.)

Not even the majority's litany of unpredictables could deter Justice Slough from dissenting.  Her dissent interpreted Government Code section 19584's reference to "special salary compensations" as "being a catchall provision that allows . . . courts to fashion appropriate remedies to ensure the employee is made whole."  (*Barber*, *supra*, 35 Cal.App.5th at p. 527 (Slough, J., dis.).)  In so holding, the dissent took "a different view of the meaning of the word 'compensation[],' " finding the word "broad enough to cover compensating the employee for work *and* for injuries related to the wrongful termination."  (*Ibid.*)  Because the term "compensation" itself is "broad and general," the dissent found it was designed "as a true catchall."  (*Ibid.*)

The *Barber* dissent reasoned that its interpretation "effectuates the purpose of the statute.  Section 19584's plain aim is making whole employees injured by their employer's misconduct or mistake. . . .  As our Supreme Court has recognized, about this provision as well as other backpay

provisions, ' "[t]he purpose of the remedy is clear. 'A backpay order is a reparation order designed to vindicate the public policy of the statute by making the employees whole for losses suffered on account of an unfair labor practice.' " ' [Citation.]" (*Barber*, *supra*, 35 Cal.App.5th at p. 528 (Slough, J., dis.).)

There is no "catch-all" "other special salary compensations" in section 6.20.100 but in my view the "as if such unsustained . . . discharge had not been invoked" is both "broad and general" (*Barber*, *supra*, 35 Cal.App.5th at p. 528 (Slough, J., dis.)) and supports a gross-up award under section 6.20.100 to make appellant "whole for losses suffered on account of an unfair labor practice." (*Ibid.*)

### *CONCLUSION*

In this case, appellant was paid six years' salary and benefits in one lump sum. She presented evidence that she owed approximately $227,000 more in taxes than she would have owed had she worked during those years and was paid per pay period. I would reverse the trial court's decision and remand for a determination of whether the evidence supports a gross-up award.

Although I disagree with the majority on the merits of appellant's appeal, I concur in two respects. First, I agree with the majority that this court has appellate jurisdiction. (Maj. Opn., pp. 5-6.) I also agree that there "are policy arguments from the perspective of a successful claimant that would support requiring the Department to pay a gross up award." The majority also cites "policy arguments from the perspective of the Department (which has no control over tax rules adopted by the Federal and State governments) that counsel in favor of a contrary conclusion." Neither the *Barber* opinion nor this one

6

was unanimous, as each garnered a dissent.  It does seem time for government entities, such as the County of Los Angeles, to address head on whether gross-up awards are authorized in wrongful termination litigation.


RUBIN, P. J.

7